JUAN L. GORBEA, peticionario, v. TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. MIGUEL A. GIMÉNEZ MUÑOZ, JUEZ, demandado.

*Número:* O-74-517      *Resuelto:* 23 de septiembre de 1975

*Virgilio Méndez Cuesta,* abogado del peticionario.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Resolvemos en el presente recurso que el Art. 1065 de nuestro Código Civil, (1) reconocedor de la regla general que

---

(1) Reza así:

"Todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario." (31 L.P.R.A. sec. 3029.)

permite la transmisibilidad de los derechos adquiridos en virtud de una obligación, en ausencia de pacto en contrario u otras circunstancias, no cubre la acción estimatoria o de *quanti minoris*—que por propia definición tiene como objeto el que pueda procurarse de un vendedor la devolución de parte del precio entregado por un comprador en proporción al valor de los vicios ocultos—ejercitada por un segundo adquirente de un bien inmueble. La naturaleza de la acción estimatoria, milita contra la aplicabilidad de dicha regla, pues no es justo ni lógico que un comprador obtenga la reducción del precio de la compraventa de quien no fue su vendedor y a quien nada satisfizo ni pagó.

Los hechos son simples:

El demandado recurrente Juan L. Gorbea vendió el 30 de junio de 1967 a los esposos Luis Fortuño Moscoso y Shirley Burset una propiedad ubicada en la Urbanización Santa María por el precio total de $52,000.00. Estos a su vez, el 1ro. de agosto de 1967, la vendieron a los esposos Miguel Angel Guiot y Elba Santiago por la suma de $57,000.00. Fortuño y Guiot demandaron conjuntamente a Gorbea el 28 de diciembre de 1967 por defectos ocultos en el sistema de drenaje, reclamando $886.00 en gastos, $5,000.00 en acción estimatoria o de "quanti minoris" y $4,000 en daños y perjuicios. Previo el uso de varios mecanismos sobre descubrimiento de prueba, la demanda fue enmendada alegándose que el "demandado [Gorbea] al igual que el co-demandante Luis Fortuño Moscoso respondían y responden a los aquí codemandantes del saneamiento. . . ."

A solicitud del demandado recurrente Gorbea, el tribunal de instancia desestimó la reclamación de Fortuño exponiendo el siguiente razonamiento:

"El artículo 1373 del Código Civil, 31 L.P.R.A. 3841, dispone que el vendedor está obligado al saneamiento por los defectos ocultos que tuviese la cosa vendida. Pero ¿quiere ésto decir que se tiene causa de acción por vicios ocultos exclusivamente contra

el vendedor? Una interpretación aislada y literal de dicho artículo conduciría a tal interpretación más una lectura del artículo 1065 del Código Civil 31 LPRA 3029, basta para rechazarla.

El referido artículo 1065 nos dice que 'Todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario'. Que sepamos, no existe pacto alguno que restrinja la cesión de los derechos de los compradores en este caso. En *Pereira* v. *Ibec,* 95 D.P.R. 28, se planteó una situación similar a la que nos ocupa y se resolvió que el adquirente del crédito litigioso queda en la misma posición que su causante. Véase además *Géigel* v. *Mariani,* 85 D.P.R. 46, donde se dice que la obligación de indemnizar es una obligación a favor de cualquier propietario.

Siendo ello así, es claro que el demandado puede ser responsabilizado frente al demandante y propietario, Sr. Guiot, más no así en lo que respecta al Sr. Luis Fortuño. En razón de lo expuesto, se ordena la desestimación de la reclamación del Sr. Luis Fortuño."

En el recurso interpuesto Gorbea aduce y argumenta que debió desestimarse también la demanda de Guiot. Antes de analizar la cuestión, forzoso es concluir que las alegaciones de la demanda reflejan que se trata de una acción estimatoria (*quanti minoris*) y no de carácter redhibitorio y que el efecto de la resolución de la sala sentenciadora es que la acción continúe exclusivamente por Guiot, segundo adquirente, contra el recurrente Gorbea, vendedor original. En *Boyd* v. *Tribunal Superior,* 101 D.P.R. 651, 656 (1973), indicamos que la acción estimatoria es aplicable a bienes inmuebles.

El error fue cometido. La acción del segundo comprador Guiot no puede subsistir *directamente* contra Gorbea, primer vendedor ya que éste sólo puede responderle a su comprador Fortuño quien jurídicamente le respondería a Guiot. Esta conclusión queda robustecida por el hecho demostrado de que Fortuño al venderle a Guiot en el escaso período de un mes, realizó la transacción obteniendo $5,000.00 adicionales a los que había pagado al adquirir del recurrente Gorbea. No nos

es posible sostener la anomalía jurídica que implica la desestimación de la demanda de Fortuño, dejando en litigio exclusivamente a personas que no contrataron entre sí, y sobre las cuales una sentencia favorable al actor constituiría un pronunciamiento judicial incompatible a la esencia y característica de la causa de acción invocada. ¿Sobre qué precio, si entre ellos no hubo compraventa, se reduciría la cuantía?

■ Los casos citados por la ilustrada sala sentenciadora de *Géigel* v. *Mariani*, 85 D.P.R. 46 (1962) y *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28 (1967), son distinguibles del que nos ocupa por tratarse de acciones fundadas en la responsabilidad del contratista y arquitecto consagrada en el Art. 1483 (31 L.P.R.A. sec. 4124), la cual por estar revestida de interés público y ser de carácter irrenunciable, puede ser ejercida por un comprador subsiguiente. La acción estimatoria y la del contratista no son equiparables por los fundamentos que exponemos a continuación.

El vendedor de cosa con vicios ocultos por regla general es víctima pasiva cuando adquirió la misma ya que no intervino en la gestión del defecto. El contratista de obra, por otro lado, resulta ser autor y padre de la imperfección que inutiliza el edificio, creador activo de la cosa defectuosa. Nuestro Código Civil deslinda cuidadosamente la diferencia pues permite al vendedor librarse de responsabilidad mediante *estipulación* con su comprador cuando ignora los vicios o defectos ocultos, Art. 1374, solución que no le es dable al contratista o arquitecto.

Las ventas sucesivas pueden introducir variaciones que alteran o eliminan la responsabilidad del trasmitente. Un vicio o defecto que resulta oculto para un primer poseedor puede tornarse manifiesto hallándose la cosa en poder de un segundo comprador. De vender éste, su responsabilidad es la de un vendedor que sabe del defecto, contrario a la del anterior vendedor que lo desconoce. El primer vendedor podría protegerse con una cláusula de renuncia estipulada

con su comprador; no así el segundo vendedor que incurriría en dolo. En la acción contra el contratista la responsabilidad es irrenunciable en todo caso, reconociéndole un mayor contenido de moral y orden público.

El inmueble puede adquirir un vicio o defecto en poder del segundo vendedor que no tenía cuando la compró el primero. El particular conocimiento pericial del nuevo comprador puede hacer el defecto cognoscible. En la situación que tiende a remediar la acción contra el contratista el vicio siempre puede ser trazado al realizador de la obra, no importa el número de poseedores intermedios.

Reiteramos que los Arts. 1373 y 1483 del Código Civil regulan situaciones y conductas distintas, referente el primero a un sujeto *pasivo* que recibió la cosa en su estado final; y el segundo a un sujeto *activo*, forjador y creador del hecho dañoso que no se hubiera producido sin su intervención.

Consideramos que la inevitable presencia de un elemento subjetivo y personal[2] en la determinación de lo que es vicio oculto vincula al comprador con su vendedor de modo especial que dificulta investir la acción estimatoria de la transmisibilidad que el Art. 1065 tan eficazmente provee para otras obligaciones.

■ El presente es un caso de excepción que evade cualquier intento de sentar nueva norma pues rara vez se efectúan dos contratos de compraventa sobre la misma cosa en el

---

[2] Para comprobar que la necesidad y conveniencia *personal* del comprador y aun su conocimiento especial o grado de instrucción son determinantes para estimar el defecto, no hay mejor argumento que el propio texto de la ley:

"El vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida, si la hacen impropia para el uso a que se la destina, o si disminuyen de tal modo este uso que de haberlos conocido el comprador, no la habría adquirido, o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que por razón de su oficio o profesión, debía fácilmente conocerlos." Art. 1373 (31 L.P.R.A. sec. 3841.)

breve plazo de 6 meses, fuera del tráfico en mercancía perecedera. Cuando esto ocurre lo correcto es que el segundo comprador demande a su vendedor y éste a su vez traiga al primer vendedor como tercero demandado, no permitiendo que el segundo vendedor evada su responsabilidad asumiendo el rol de demandante asociado a su propio comprador. Ello no sólo desnaturaliza la norma sustantiva expuesta, sino distorsiona el procedimiento.

■ Finalmente, consideramos de rigor hacer constar que aun cuando fue denominada como "Resolución", dicho dictamen en esencia constituyó una sentencia parcial que intentaba finalizar la controversia entre Fortuño y el recurrente. No obstante, surgiendo de los autos originales que por haber sido erróneamente denominada, no se siguió el trámite formal de archivo en autos dispuesto en las Reglas de Procedimiento Civil vigentes, *Sánchez* v. *Municipio de Cayey*, 94 D.P.R. 92, 99–100 (1967), nuestro Mandato no perjudica sino beneficia al codemandante Fortuño, quien podrá litigar su causa de acción. La situación es procesal y jurídicamente distinta a lo resuelto en *Quintana Martínez* v. *Valentín*, 99 D.P.R. 255 (1970).

Por los fundamentos expuestos, *se dictará Sentencia dejando sin efecto la resolución del tribunal de instancia de fecha 14 de octubre de 1974 y se devolverá el caso para que el mismo continúe con sujeción a los pronunciamientos aquí dispuestos.*

En Juez Asociado, Señor Angel Martín, concurre con el resultado y el Juez Asociado, Señor Díaz Cruz, manifiesta su conformidad excepto en cuanto a mantener vigente la reclamación del codemandante Fortuño, cuya desestimación confirmaría por no haber establecido revisión. El Juez Presidente, Señor Trías Monge, disiente con opinión.

—O—

Opinión disidente del Juez Presidente, Señor Trías Monge.

San Juan, Puerto Rico, a 23 de setiembre de 1975

Discrepo respetuosamente del criterio vertido en la opinión circulada. Se trata en este caso de la figura conocida como venta en cadena. Han ocurrido aquí dos ventas sucesivas del mismo bien inmueble. Los dos compradores demandan al vendedor primario antes de expirar seis meses de la primera compraventa por defectos ocultos. El tribunal de instancia desestimó la reclamación del primer comprador, quien no ha recurrido ante nos. El recurrente es el vendedor primario, quien se querella de que no se haya desestimado también la acción del segundo comprador. Se falla en la opinión circulada a favor del recurrente a base de que la acción estimatoria sólo puede incoarse contra el vendedor inmediato.

Se fundamenta la opinión circulada en el argumento de que la acción de saneamiento, por regla general y en ausencia de una cesión expresa o de pacto en que tal obligación se asuma, no permite que el primitivo vendedor responda directamente de los vicios ocultos a segundos y subsiguientes compradores. No se cita ninguna autoridad que sostenga dicha posición. Algunos comentaristas utilizan dicho enfoque en casos referentes al saneamiento por evicción, pero muy rara vez cuando se trata de vicios ocultos.

Aun en la instancia del saneamiento por evicción, sin embargo, analogía de dudosa solidez, se ha señalado que es más propio considerar que cada comprador cede implícitamente su acción de saneamiento por evicción al vender posteriormente la cosa. Manresa, *Comentarios al Código Civil Español*, vol. X, to. 1, 1969, págs. 290–292. Véase también: Puig Brutau, *Fundamentos de Derecho Civil*, t. II, vol. II, págs. 195–196 (1956). Fuera de España, la posición de Manresa y Puig Brutau sobre este problema del saneamiento por evicción halla fuerte eco. *Grande Dizionario Enciclopédico del Diritto*, Fratelli Fabri Ed., t. XXVIII, 1964, pág. 344, Cass. Civ., 8 Ottobre 1955, n. 2921, en Giust. civ., 1956, I, 480 (It.).

No es necesario acudir a la analogía citada, no obstante, pues el saneamiento por vicios ocultos no está totalmente huérfano de análisis en la doctrina española. De Buen, por ejemplo, sostiene, aunque no sin reservas derivadas de la ausencia de disposición específica al efecto, que dicha acción puede dirigirse contra el vendedor primario pues ello evitaría trámites inútiles y gastos superfluos. Notas de De Buen a Colin y Capitant, *Curso Elemental de Derecho Civil*, to. 4, 3ª ed., 1955, págs. 215–216. De Buen se refiere en sus comentarios a la acción redhibitoria, pero afirma que la acción redhibitoria y la estimatoria o de *quanti minoris* "coinciden en casi todos los detalles" y no expresa doctrina en contrario sobre este punto. *Op. cit.*, 217. Tampoco hemos hallado tratadista alguno que sostenga que debe diferenciarse sobre el particular que nos concierne entre estas dos acciones, las que derivan, después de todo, del mismo artículo del Código Civil. Véase el Art. 1373 de nuestro Código Civil, 31 L.P.R.A. sec. 3841.

Otros civilistas, interpretando textos idénticos o esencialmente similares al de nuestro Código, y sin contar tampoco con disposiciones legislativas específicas sobre el problema, se pronuncian sin reservas sobre la cuestión que nos ocupa. Esmein, por ejemplo, estima que tanto en la acción redhibitoria como en la estimatoria el último comprador no está constreñido a demandar a su vendedor inmediato, ya que debe estimarse que éste le ha cedido implícitamente su acción contra el vendedor anterior. Aubry et Rau, *Droit Civil Français*, 6ᵉ ed., par Esmein, Paris, t. 5, 1947, pág. 87. Véase: Savatier, *Cours de Droit Civil*, Paris, vol. 2, 1949, pág. 341; Le Page, *Traité Elémentaire de Droit Civil Belge*, Bruxelles, 1951, t. 4, pág. 214; Planiol et Ripert, *Traité Pratique de Droit Civil Français*, par Hamel, 2ᵉ ed., Paris, t. X, 1956, No. 138, pág. 157; Auletta, G. G., *La Risoluzione per Inadempimento*, Milano, 1942, pág. 440.

La noción de que las acciones disponibles al comprador para hacer valedera la obligación de saneamiento por vicios

ocultos pueden radicarse tan sólo contra su vendedor inmediato se funda primordialmente en antiguas consideraciones sobre la necesidad de nexos contractuales directos (*"privity of contract"* en derecho angloamericano) entre demandante y demandado en las acciones *ex contractu*. Todavía algunos autores favorecen la aplicación estricta de esta doctrina, Scialoja e Branca, *Commentario del Codice Civile*, Libro Quarto, Bologna e Roma, 1964, pág. 216, n. 1, pero la tendencia general moderna, tanto en el derecho civil como en el estadounidense, es definitivamente contraria. Véase el excelente libro de Amaudruz, M., *La Garantie des Défauts de la Chose Vendue*, Berne, 1968, en que se estudia el problema a la luz del derecho suizo, el alemán, el francés, el inglés y el norteamericano. Williston estima que la doctrina del nexo contractual directo está en proceso de desintegración. 2 Williston, *On Sales*, 4th ed., 1974, pág. 339.

Importantes razones de orden público militan a favor de tal posición. Limitar a cada adquirente a demandar tan sólo a su vendedor inmediato no le ofrece suficiente protección a los consumidores. El vendedor anterior puede contar con recursos más adecuados o estar más asequible o aun ser, en ciertos casos, la única persona o entidad verdaderamente existente. La regla del nexo contractual directo también puede penalizar indebidamente al intermediario en determinadas situaciones, Amaudruz, *op. cit.*, 163, o provocar una innecesaria cascada de litigios.

En este propio foro nos hemos liberado en otras circunstancias de los rigores de la doctrina del nexo contractual directo. En *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 65–66 (1967), resolvimos que la acción del comprador original de una vivienda contra el contratista-vendedor se transmite a compradores subsiguientes en ausencia de pacto en contrario. La opinión circulada distingue este dictamen a base de que la acción decenal está revestida de interés público y es irrenunciable mas, con toda deferencia, no alcanzamos a ver por qué

se estima que están despojadas de interés público las acciones redhibitorias y de *quanti minoris*. Tampoco alcanzamos a ver qué relación hay entre la renunciabilidad de la acción *quanti minoris* o estimatoria y su transmisibilidad cuando no se ha renunciado a su ejercicio. Una acción de este tipo no deja de ser transmisible por el mero hecho de ser renunciable. Unicamente lo deja de ser cuando se ha renunciado.

En *Ferrer* v. *General Motors Corp.*, 100 D.P.R. 246 (1971), se rompió la cadena también, utilizando el concepto de la garantía expresa. Sobre este concepto valga señalar que la doctrina de la garantía implícita priva también en esta jurisdicción. *Mendoza* v. *Cervecería Corona, Inc.*, 97 D.P.R. 499 (1969).

En resumen, a tono con los desarrollos señalados, la solución más indicada en este caso es la que allana el antiguo obstáculo de la doctrina del nexo contractual directo y le permite al último comprador vindicar su derecho al saneamiento por vicios ocultos bien por demanda contra su vendedor inmediato o mediante acción contra el vendedor primario. El Art. 1065 de nuestro Código Civil, 31 L.P.R.A. sec. 3029, dispone que "Todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario." No hay razón para que este artículo, utilizado en *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 65 (1967), no se aplique también a los hechos de este caso. Cuando se demanda al vendedor anterior, debemos señalar, no obstante, que el último comprador se sujeta a las defensas disponibles contra su cedente. *Pereira*, supra, 66. La causa que está ejerciendo es la de cedente.

Una última dificultad que presenta la opinión circulada es que se revoca la resolución del tribunal de instancia y luego se decide que el primer comprador podrá continuar su litigio, en cadena, contra el vendedor original demandado. Esta causa de acción, sin embargo, ya había sido desestimada y no se recurrió ante este Tribunal a solicitar la reinstalación del

pleito. Aunque es cierto que este Tribunal tiene jurisdicción sobre la resolución puesto que no fue archivada en autos copia de su notificación, *Sánchez* v. *Municipio de Cayey*, 94 D.P.R. 92 (1967), la regla establecida es que hay que pedir revisión para que ésta pueda concederse. *Quintana Martínez* v. *Valentín*, 99 D.P.R. 255 (1970).

Por las razones expuestas confirmaría la resolución del tribunal de instancia negándose a desestimar la acción del último adquirente contra el primer vendedor.