Manuel Rivera Rosado, etc., demandantes y recurridos, *v.* Estado Libre Asociado de Puerto Rico, demandado y recurrente.

*Número:* R-80-391 *Resuelto:* 27 de mayo de 1981

*Héctor A. Colón Cruz, Procurador General, y Lorraine Riefkohl, Procuradora General Auxiliar,* abogados del recurrente; *Efraín Pérez Jiménez,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Tres compradores sucesivos de un automóvil se unieron en demanda de daños y perjuicios contra el vendedor original. El recurrido Manuel Rivera Rosado obtuvo la buena pro en subasta de un automóvil Toyota-Célica por la Oficina de Transporte del Estado Libre Asociado[1] que le fue adjudicado por $752; le hizo alguna reparación de hojalatería y pintura a un costo de $225 y lo vendió en $1,100 a su hijo Wilfredo Rivera Rivera quien como su padre se dedicaba a la compraventa de vehículos de motor y quien le hizo ulteriores reparaciones en la carrocería en las que gastó $200.00 y lo vendió en $1,400.00 a Antonio Colón. El 13 febrero, 1977 conducía el referido Toyota-Célica un joven de nombre Ángel Manuel Colón Allende quien fue intervenido por una patrulla de la Policía mientras se estacionaba, atraídos por una cerradura rota y encontraron que el número en la licencia del automóvil no coincidía con el de su motor. La policía fue en busca del vendedor Wilfredo Rivera a quien llevaron al Cuartel de

---

[1] La agencia facilitó el registro del vehículo a favor del comprador en el Departamento de Obras Públicas.

la Detective donde permaneció detenido desde las 10:30 de la mañana hasta las 3:00 de la tarde de ese día. El investigado estaba casado con la Lcda. Lilia Oquendo, funcionaria del Departamento de Justicia, había sido agente del Negociado de Investigaciones Criminales por año y medio y nunca había pasado por esta experiencia. Confiscado el vehículo por la Policía como hurtado, Wilfredo Rivera devolvió a su comprador Antonio Colón el precio de venta, pero éste perdió una inversión de $191.00 en gomas nuevas, batería y bomba del *wiper*, y fue perturbado por el incidente de ocupación del carro que conducía su hijo Colón Allende, sufrimiento moral que la sala de instancia estimó en $500.00, por lo que se le otorgó compensación total de $691.00. El tribunal concedió al segundo comprador Wilfredo Rivera indemnización global de $5,000 por sus sufrimientos y angustias al verse involucrado como sospechoso en la investigación por hurto, siendo un comprador inocente, detenido en el cuartel y sometido a la angustia de una imputación injusta, incluyendo en dicha partida la pérdida del precio pagado ($1,100.00) y la inversión de $200 en mejoras al automóvil; y concedió a Manuel Rivera, primer comprador en subasta, daños por valor de $1,977.00 de los cuales $1,000 corresponden a daños morales generados por la investigación en la que fue envuelto, más $752 de precio pagado y $225 invertidos en la reparación.

La causa de acción ejercitada por los compradores del vehículo que resultó hurtado es análoga al saneamiento por evicción que provee el Art. 1364 [2] del

---

[2] Art. 1364 Código Civil

"Tendrá lugar la evicción cuando se prive al comprador, por sentencia firme y a virtud de un derecho anterior a la compra, de todo o parte de la cosa comprada.

"El vendedor responderá de la evicción aunque nada se haya expresado en el contrato.

"Los contratantes, sin embargo, podrán aumentar, disminuir o suprimir, esta obligación legal de vendedor."

Código Civil, que tendrá lugar cuando se prive al comprador por sentencia firme y a virtud de un derecho anterior a la compra, de todo o parte de la cosa comprada. Su ejercicio no está impedido por la disposición del Art. 1369 al efecto de que el saneamiento no podrá exigirse hasta que haya recaído sentencia firme, por la que se condene al comprador a la pérdida de la cosa adquirida, a pesar de que en este caso no se dictará tal sentencia por haber el propio E.L.A., vendedor original, desposeído al comprador de buena fe mediante simple acto de autoridad de la Policía; pues tal confiscación tiene la consecuencia práctica de una sentencia determinante de "pérdida de la cosa adquirida". Hay, por tanto, remedio para los compradores en el citado Art. 1364, y la medida de saneamiento es la regulada por el Art. 1367(³) del Código, que especifica lo que tendrá el comprador derecho a exigir del vendedor si la evicción se ha realizado. Así ha de ser considerando que la determinación con absoluta certeza de quién era el verdadero dueño del automóvil y su entrega por el poseedor que era el tercer comprador sucesivo, tiene la eficacia y finalidad irreversible de sentencia firme ganada en evicción, elemento que completa la analogía con la acción especial reparadora entre comprador y vendedor del Art. 1364.

■ La solución analógica está propiciada por no ser el

---

(³) Art. 1367 Código Civil

"Cuando se haya estipulado el saneamiento o cuando nada se haya pactado sobre este punto, si la evicción se ha realizado, tendrá el comprador derecho a exigir del vendedor:

"1. La restitución del precio que tuviere la cosa vendida al tiempo de la evicción, ya sea mayor o menor que el de la venta.

"2. Los frutos o rendimientos, si se le hubiere condenado a entregarlos al que le haya vencido en juicio.

"3. Las costas del pleito que haya motivado la evicción y en su caso las del seguido con el vendedor para el saneamiento.

"4. Los gastos del contrato, si los hubiese pagado el comprador.

"5. Los daños e intereses y los gastos voluntarios o de puro recreo u ornato, si se vendió de mala fe."

requisito de sentencia firme, elemento permanente e inexorable en todo caso de acción bajo el 1364, ya que el mismo artículo lo caracteriza como susceptible de aumento, disminución o supresión por los contratantes. Bonet Ramón(4) favorece esta interpretación extensiva al comentar:

> El Código Civil únicamente establece reglas de aplicación al saneamiento en caso de evicción, si éste se origina en demanda promovida ante la autoridad judicial, y nada declara respecto a otros actos, que representando el ejercicio de un derecho preexistente al contrato de compraventa, puedan interrumpir o anular la posesión pacífica del comprador sobre la cosa comprada, como pueden serlo en el estado actual de nuestra legislación las reclamaciones de acuerdos que tienen facultad para dictar las autoridades administrativas sobre los bienes y derechos que sean objeto de responsabilidades que hacer efectivas en favor de la hacienda o entidades asimiladas; pero existiendo igual razón de derecho para amparar el del comprador en uno que en otro caso y en orden a las dos jurisdicciones, en todos debe el vendedor responder de la que constituye garantía inherente al contrato, conforme a sus esenciales condiciones, de las que el saneamiento responde a la primordial obligación de entregar la cosa, la más importante bajo el punto de vista económico como el jurídico, sin la cual no llevaría dicho contrato al fin a que responde en beneficio de la difusión de la riqueza, y por tanto, merecen y debe darse la interpretación extensiva a las prescripciones de la Sec. 3.ª del Cap. IV del Tít. IV del Lib. IV [31 L.P.R.A. sec. 3831 y ss.] que solamente previenen y desarrollan la responsabilidad del saneamiento si sobre la cosa vendida por derecho anterior a la compra se ha suscitado y resuelto por sentencia firme una contienda judicial que priva al comprador de todo o parte de lo que adquirió justamente.

Castán Tobeñas, ponderando la exigencia (de los Arts. 1364 y 1369) de que el vendedor sólo responde de la privación de la cosa enajenada y que ésta es solo efectiva y definitiva cuando apurados todos los trámites procesales se

---

(4) Bonet Ramón, *Código Civil Comentado*, 2da edición (1964), págs. 1158–1159.

dicta sentencia ejecutoria (contra la que no cabe recurso alguno), puntualiza que el Tribunal Supremo de España por aplicación del principio de analogía ha entendido en sentencias de 5 dic., 1925, (5) 7 junio, 1956 y 27 mayo, 1957 "que tiene lugar el saneamiento cuando la desposesión se realiza por virtud de resolución administrativa, recaída para hacer efectivas responsabilidades a que los bienes estén afectos en favor de la Hacienda o entidades asimiladas". *Derecho Civil Español, Común y Foral,* 9na ed., T. 4, pág. 116.

No puede quedar el comprador indemne frente al despojo sufrido por la acción reinvindicatoria de un tercero con mejor título al bien vendido, si la pérdida de lo comprado se produce no por su allanamiento a la reclamación del evincente, sino por la fuerza o imposición de los órganos del Estado que guardando el debido proceso de ley alcancen una determinación de la razón derecha comparable a la que se obtendría por sentencia.

■ En su aplicación al presente caso del Art. 1367, los conceptos de reparación a que tiene derecho el comprador son: (1) la restitución del precio que tuviere la cosa vendida al tiempo de la evicción (desposesión); y (2) los daños e intereses y los gastos voluntarios o de puro recreo u ornato, si se vendió de mala fe.

■ El vicio jurídico, el defecto de título que no detuvo a la Autoridad de Transporte en sacar a subasta un vehículo que no le pertenecía, la hacen responsable al comprador, sin que pueda alegar buena fe, porque como

---

(5) Según lo declarado en términos generales por sentencia de 5 diciembre, 1925, la obligación de sanear por evicción ". . . 'tiene su fundamento de Derecho natural en que si nada se transmitió al comprador, nada debe recibir del mismo, y si éste le ha pagado el precio de aquello de que resulta desposeído por decisión de la autoridad legítima, a la que sirve de fundamento un derecho anterior a la compra, debe ser indemnizado, tanto del precio como de cuantos daños y menoscabos haya sufrido el patrimonio del comprador por directa consecuencia de la privación del derecho que justamente había adquirido en el contrato.'". Puig Brutau, *Fundamentos de Derecho Civil,* ed. 1956, T. II, Vol. 2, pág. 194.

agencia del Estado tenía acceso franco al informe de la Policía relacionado con su ocupación, tenía conocimiento de que llegó a su poder como vehículo hurtado y los medios de comprobar esa condición mediante inspección que con poco esfuerzo hubiese descubierto la cerradura violada y el número de motor alterado. Este descuido y negligencia de la agencia supera por mucho cualquier atribución de culpa al comprador [6] por el simple hecho de ser un licitador habitual en este tipo de subastas, condición que no lo convierte necesariamente en perito en defectos ocultos, ya que todo comprador en subasta organizada por una agencia del Gobierno puede confiar en que el Estado sigue unos procedimientos escrupulosamente correctos y no vende lo que no le pertenece.

Nos resta decidir si esta acción de saneamiento fundada en la garantía de vendedor queda aprisionada en el vínculo de contratantes directos, o si por el contrario se extiende a compradores sucesivos de modo que el último comprador pueda demandar al primero de los vendedores que enajenó en condiciones que pudieron dar lugar a la evicción. Abordamos un aspecto de este problema al resolver en *Gorbea* v. *Tribunal Superior*, 104 D.P.R. 138 (1975), que la acción estimatoria o *quanti minoris* no se trasmite por el comprador que vende a un segundo adquirente. Recortamos el derecho del comprador frustrado y limitamos su acción reparadora por la regla del nexo contractual directo que este Tribunal había abandonado en *Ferrer* v. *General Motors Corp.*, 100 D.P.R. 246 (1971), *Mendoza* v. *Cervecería Corona, Inc.*, 97 D.P.R. 499 (1969) y *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 65-66 (1967). [7] Los esenciales fundamentos de *Gorbea:* la dificultad en clasificar los vendedores como de

[6] Declara el Art. 1373 del Código Civil que el vendedor no será responsable de los defectos manifiestos o que estuvieren a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que por razón de su oficio o profesión, debía fácilmente conocerlos.

[7] Véase la opinión disidente del Juez Presidente, Señor Trías Monge, en *Gorbea*, supra, a la pág. 144 y ss.

buena o mala fe porque un vicio oculto para uno podría tornarse manifiesto para el que le sigue, la incertidumbre en cuanto al tiempo y bajo qué poseedor surge un vicio o defecto que no conocía el primer vendedor, y la inasible facultad de percepción del vicio en orden a distintos grados de conocimiento pericial del nuevo comprador, en el caso de evicción no levantan barrera contra la libre operación del Art. 1065 del Código en su prevención de que todos los derechos adquiridos en virtud de una obligación son transmisibles con sujeción a las leyes, si no se hubiese pactado lo contrario. *Pereira* v. *I.B.E.C.*, supra.

■ El derecho al saneamiento por evicción se trasmite al comprador con la cosa vendida, y por consiguiente éste tiene contra el vendedor de su vendedor la acción que a este último vendedor correspondía. En el caso que nos ocupa el Estado fue el forjador y creador del hecho dañoso, fuente única de la irregularidad que ignorada por los vendedores y compradores, causó la anulación de sus contratos de compraventa y la pérdida de sus inversiones. Así de clara la causa de evicción, sin mediar la renuncia al saneamiento por ninguno de los compradores que autoriza el Art. 1366, fue correctamente estimada la demanda, pues de otro modo hubiese sido frustrada la finalidad de los contratos traslativos, y la causa de la venta que para el comprador es adquirir la cosa para servirse de sus utilidades.

*Con estos antecedentes y fundamentos, la sentencia revisada será, confirmada.*

El Juez Presidente Señor Trías Monge, conforme con la opinión, ratifica su criterio en *Gorbea* v. *Tribunal Superior*, 104 D.P.R. 138, 144 y ss. (1975). El Juez Asociado Señor Torres Rigual no intervino. Los Jueces Asociados Señores Irizarry Yunqué y Negrón García concurren en el resultado, el primero con la siguiente expresión:

Es innecesario y se presta a confusión recurrir en este caso a analogías para justificar que puedan aplicarse, para determinar la indemnización por daños, conceptos basados en relaciones que surgen de un contrato con conceptos que rigen la materia de daños extracontractuales. Los demandantes optaron en este caso por reclamarle al Estado a base de su responsabilidad extracontractual, y así lo entendió y a base de ello dispuso indemnización el tribunal de instancia. No hay que recurrir a una analogía con la imposición de daños que surgen de la obligación de saneamiento de parte del vendedor para confirmar la bien fundada sentencia recurrida.