# 2006 DTA 75

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL I**

IVETTE GARCÍA REYES
Querellante-Recurrida

v.

CRUZ AUTO CORP.
Querellado-Recurrente

Núm. KLRA-2005-00173

San Juan, Puerto Rico, a 28 de abril de 2006

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
la Juez López Feliciano y la Juez García García

López Feliciano, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Cruz Auto Corp., en adelante la recurrente, comparece ante este Tribunal solicitando la revocación de una resolución dictada el 28 de enero de 2005 por el Departamento de Asuntos del Consumidor, en adelante el DACO. Mediante la referida resolución, el DACO decretó la resolución de un contrato de compraventa habido entre la recurrente y la Sra. Ivette García Reyes, en adelante García Reyes.

Con el beneficio de la transcripción de la prueba oral desfilada ante la agencia administrativa y de la comparecencia de las partes, resolvemos.

**Los Hechos e Incidentes Procesales Pertinentes**

Según se desprende de la transcripción de la prueba desfilada ante el DACO, los hechos son los siguientes:

*"El 28 de septiembre de 2002, García Reyes adquirió un vehículo de motor marca Mitsubishi modelo Nativa del 2001, color blanco en Cruz Auto Corp. La guagua tenía un precio de venta de $22,000.00."*

Del testimonio de García Reyes surge que ésta alegadamente pagó un pronto de $4,000.00 al momento de la compraventa; y que financió los restantes $18,000.00 a través del Scotiabank. No ofreció evidencia sobre el pago del referido pronto a excepción del pagaré del contrato de venta del Scotiabank. Pagó, además, $200.00 por la tablilla, por el que la recurrente le entregó recibo.

Al momento de la compraventa, la recurrente le informó a García Reyes verbalmente y por escrito que a la unidad se le reemplazó el guardalodo y el bumper delantero; y que la misma había sido pintada. ■ La recurrente había adquirido el vehículo por el precio de $14,500.00 mediante una subasta realizada por la Mitsubishi Motors Sale of Caribbean el 10 de abril de 2002, a la que fueron invitados sólo concesionarios de automóviles Mitsubishi.

Debido a que el vehículo tenía una vibración irregular y a que se *"tiraba para el lado izquierdo"* mientras García Reyes lo conducía, el 16 de enero de 2003, ésta tuvo que llevarlo a las facilidades de la recurrente para que lo repararan.

Según el testimonio del Sr. Ramón González Gómez, mecánico de profesión, quien inspeccionó el vehículo el 28 de enero de 2003, en esa ocasión sólo se alineó el vehículo, porque de todo lo demás se encontraba en buenas condiciones.

El 27 de enero de 2003, García Reyes, mediante carta certificada, notificó a Scotiabank que la unidad adolecía de vicios ocultos. Posteriormente, el 3 de febrero siguiente, mediante otra carta certificada, le notificó su intención de cancelar el contrato de compraventa.

El 5 de febrero de 2003, García Reyes presentó una querella en el DACO, Oficina Regional de Caguas, en contra de la recurrente. En la misma alegó que al momento de la compraventa no se le notificó que el *"compacto"* de la unidad había sufrido daños a consecuencias de un choque, ni que se le había sustituido el bonete por uno de Taiwán. Alegó que lo anterior vició el consentimiento por ella prestado, por lo que solicitó la cancelación del contrato y la devolución de su dinero. ■

El 5 de marzo de 2003, García Reyes enmendó la querella para incluir dentro de su reclamación que algunas piezas del automóvil, el bonete y el guardalodo, no fueron registradas en el Departamento de Transportación y Obras Públicas, en adelante DTOP.

La recurrente contestó la querella negando todas las alegaciones de García Reyes y aclarando que al momento de la compraventa ésta no pagó dinero alguno, a excepción de doscientos dólares ($200.00) para cubrir el costo de la tablilla.

El 14 de julio de 2004, García Reyes presentó esta misma querella en el DACO, Oficina Regional de San Juan. [3] Durante todo el proceso se realizaron tres inspecciones técnicas al vehículo: el 26 de febrero de 2003, el 2 de abril de 2003 y el 5 de marzo de 2004.

Durante la primera inspección se concluyó que el bonete, el guardalodo y el *"bumper"* de la unidad habían

sido reemplazados; y que el bonete estaba descuadrado y le faltaban los "clips" del guarda fangos. Dentro de las observaciones, el inspector anotó "que las piezas que le instalaron al vehículo son originales."

La segunda inspección se realizó el 2 de abril de 2003, y en la misma se concluyó que el cubre falta del tapa máquinas del lado izquierdo se apreciaba nuevo, a diferencia del bonete el cual aparentaba haber sido reemplazado. El técnico concluyó que el automóvil había recibido una reparación superficial, ya que no se encontró el chasis doblado, y que no se hizo un estimado de reparación, ya que el auto había sido intervenido por un hojalatero.

En la tercera inspección se concluyó que las piezas que le fueron instaladas al vehículo eran originales.

Durante la vista administrativa celebrada el 30 de noviembre de 2004 y el 25 de enero de 2005 testificaron, además de García Reyes, Carlos J. Rivera Ortega; Ramón González Gómez; Héctor Rodríguez; Iván Casiano Resto; y Julio Cruz.

De los testimonios vertidos, debemos resaltar que Carlos J. Rivera Ortega, perito de García Reyes, declaró que la primera vez que éste vio el vehículo notó serios descuadres en el mismo que evidenciaban que éste había sufrido un fuerte impacto. Señaló que para la segunda inspección habían sido corregidos todos los defectos señalados.

De otra parte, precisa mencionar que el Sr. Iván Casiano Resto, vendedor de la recurrente, declaró que le informó a García Reyes al momento de la compraventa que la unidad había sido reparada. No obstante, de su declaración también se desprende lo siguiente:

"R ...Yo le dije, 'Mire hay una unidad en el lote de Humacao que fue reparada, yo voy a ir a Humacao a buscar la unidad y si usted desea déme (sic) más o menos un tiempo razonable para yo ir a buscar la unidad y nos encontramos en el lote de ININTELEGIBLE." Y así ININTELEGIBLE, ella llegó, vio la guagua...

P ¿Qué guagua?

R Una Mitsubishi Nativa del 2003, blanca, ININTELEGIBLE y le gustó la unidad. Le llené la solicitud, y yo le expliqué a ella que se le estaba dando en los cuatro mil ...en ese momento eran tres mil ochocientos dólares de descuento por el accidente que tenía, y también por las ININTELEGIBLE a ella.

P ¿Qué accidente?

R Pues que tiene unas piezas que se habían reemplazado ININTELEGIBLE lado izquierdo, el "bumper". En ese momento realmente yo no tenía conocimiento del bonete que le habían impactado, pero sí se le explicó todo lo demás. Luego de eso, la señora decide llenar la solicitud y el banco le aprobó el préstamo sin ningún tipo de problema...". ■

Ante este cuadro fáctico, el 28 de enero de 2005, el DACO emitió resolución en el caso. En la misma concluyó que la recurrente tenía conocimiento de que el vehículo aquí en controversia había sido impactado y que sólo le notificó por escrito a García Reyes que a la unidad se le habían reemplazado el guardalodos y el "bumper" delantero debido a que tenía unos rayazos. Sostuvo el DACO que con esta acción la recurrente incumplió con lo dispuesto en el Artículo 22.1 del Reglamento de Garantías de Motor; y que la actuación de la recurrente de ocultarle información a García Reyes constituyó una "conducta dolosamente grave" que daba lugar a la resolución del contrato habido entre las partes. A tenor con lo anterior decretó la anulación del contrato de compraventa y ordenó la restitución de las prestaciones entre las partes.

El 15 de febrero de 2005, la recurrente y Scotiabank solicitaron la reconsideración. Ambas partes alegaron que no procedía la resolución del contrato, ni que se ordenara la restitución de los $4,000.00 alegadamente pagados por García Reyes como pronto pago. El DACO se pronunció no ha lugar en cuanto a éstas solicitudes.

Inconforme con esta determinación, la recurrente comparece ante Tribunal mediante el recurso de epígrafe.

## II
**Las Cuestiones Planteadas**

La recurrente sostiene que el DACO cometió los siguientes cuatro errores:

*"Erró el Departamento de Asuntos del Consumidor en la apreciación de la prueba oral y documental presentada durante la vista administrativa; al alcanzar determinaciones de hechos y conclusiones de derecho que no están sustentadas por el récord administrativo; y al revertir el peso de la prueba en el caso de epígrafe.*

*Erró el Departamento de Asuntos del Consumidor en la aplicación de la doctrina de saneamiento y resolución de contrato a los hechos probados durante la vista administrativa.*

*Erró el Departamento de Asuntos del Consumidor al no aplicar a los hechos de epígrafe lo dispuesto en la Ley Núm. 330 de 2 de septiembre de 2000.*

*Erró el Departamento de Asuntos del Consumidor al considerar como vicios ocultos unos daños sufridos por el vehículo mientras se encontraba dentro del taller de servicio."*

Lo que esencialmente debemos determinar es si el DACO actuó correctamente al resolver el contrato de compraventa habido entre las partes, y al ordenar la restitución de las prestaciones.

## III
**El Derecho Aplicable**

### -A-
**Saneamiento por Vicios Ocultos**

Todo vendedor de un bien mueble o inmueble está obligado a la entrega y saneamiento de la cosa objeto de la venta. Artículo 1350 del Código Civil, 31 L.P.R.A. sec. 3801. Por lo que el vendedor no cumple sólo con entregar la cosa objeto del contrato, sino que también tiene que garantizar al comprador la posesión pacífica y útil de la misma.

Este deber de garantía es conocido en el derecho de contratos con el nombre de saneamiento por evicción (perturbación jurídica del derecho adquirido) y saneamiento por vicios ocultos (perturbación económica de la posesión de la cosa). Ambas modalidades del saneamiento están consignadas expresamente en el Artículo 1373 del Código Civil, 31 L.P.R.A. sec. 3831.

El saneamiento o redhibición se produce cuando, después de verificada la entrega de la cosa, se observan vicios ocultos que la hacen impropia para los usos a que se destina o que disminuyen de tal modo su utilidad que, de haberlos conocido el comprador, no lo hubiese adquirido o habría dado menos precio por ella. *Polanco López v. Cacique Motors*, 165 D.P.R. ___ (2005), **2005 J.T.S. 101**; *Domínguez Talavera v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387, 397 (1999).

Para que proceda la acción redhibitoria son necesarias las siguientes circunstancias: a) Que la cosa adolezca de un vicio; b) Que este vicio sea grave, entiéndase que el vicio haga a la cosa impropia para el uso a que se la destina, o que disminuya de tal modo su utilidad que, de haberlo conocido el comprador, no la hubiese adquirido o hubiese dado menos precio por ella; c) Que sea oculto; d) Que sea preexistente a la venta; y e) Que se ejercite la acción en el plazo legal, que es de seis (6) meses contados desde la entrega de la cosa vendida. *Polanco López v. Cacique Motors, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., supra; Gorbea v. Tribunal Superior,* 104 D.P.R. 138, 141-143 (1975).

Se ha resuelto en la jurisprudencia que no son vicios redhibitorios o cuantiminosos aquellos defectos que no exceden de la medida de las imperfecciones menores que cabe esperar normalmente en un producto determinado. Tampoco se requiere que el defecto imposibilite el uso de la cosa; basta con que merme notablemente su valor. *Domínguez Talavera v. Caguas Expressway Motors, Inc., supra.*

A los fines de la procedencia de la acción redhibitoria, el Tribunal Supremo adoptó el criterio de que la apreciación de la importancia de los defectos es esencialmente una cuestión de hecho, por lo que el foro de instancia está en mejor posición para hacer esta apreciación que los foros apelativos. Por lo tanto, se justifica la intervención con la discreción del juzgador, sólo en aquellos casos en que se demuestre ausencia de prueba adecuada o error manifiesto en su apreciación. *García Viera v. Cuidad Chevrolet, Inc.,* 110 D.P.R. 158 (1980); *D.A.C.O. v. Marcelino Mercury, Inc.,* 105 D.P.R. 80 (1976). Similar criterio rige la revisión de una decisión administrativa.

Nuestro Código Civil establece en su Artículo 4, 31 L.P.R.A sec. 4, que *"los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero. Una persona renuncia a sus derechos cuando tiene cabal y actual conocimiento de los mismos y su intención de renunciarlos es clara."* *Mendoza Aldarondo v. Asociación de Empleados,* 94 D.P.R. 564 (1967). La renuncia de derechos debe ser clara, terminante e inequívoca. *Eastern Sands, Inc. v. Roig Comm. Bank,* 140 D.P.R. 703, 720 (1996); *Chico v. Editorial Ponce, Inc.,* 101 D.P.R. 759, 778 (1973); *Cabrera v. Doval,* 76 D.P.R. 777 (1954).

Dicha renuncia debe ser interpretada estrictamente en contra de la parte que descansa en ella para liberarse de responsabilidad. Si posible, su interpretación debe ser contraria a la exoneración. Para que una parte quede exonerada, el lenguaje usado en el documento de descargo debe indicarlo así, en forma clara y explícita. A esos fines, un factor importante en la determinación de la validez de una cláusula de relevo es el poder relativo de negociación de cada uno de los contratantes. Si no se encuentran en igualdad de condiciones y de fuerza, de manera que una parte se encuentra obligada a aceptar el relevo de responsabilidad de la otra parte, el relevo puede ser nulo, más aún cuando se trata de derechos y garantías consagradas en nuestra Constitución. *Arroyo v. Rattan Specialties Inc.,* 117 D.P.R. 35, 62 (1986).

Según Vázquez Bote, la admisibilidad de las cláusulas de exoneración depende de que siempre concurran los siguientes requisitos: (1) que se trate de un auténtico pacto en que las partes actúen en plena y completa libertad, por lo que, consiguientemente, estén en igualdad de condiciones; si una de las partes se encuentra en un plano de superioridad, la cláusula de exoneración ha de considerarse nula; (2) que el convenio de exoneración debe constar de modo expreso y claro, sin posibilidad alguna de que pretenda deducirse indirectamente; y (3) que las cláusulas de exoneración deben interpretarse con carácter restrictivo. Vázquez Bote, *Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño,* San Juan, Equity Publishing Co., 1991, T. V, págs. 286-287.

Si bien el Código Civil de Puerto Rico consagra la libertad de contratación, igualmente contempla el que la voluntad de los contratantes no sea contraria a las leyes, a la moral, ni al orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372.

## -B-
## El Reglamento de Garantías de Vehículos de Motor

En virtud de la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 del 24 de septiembre de 1979, 10 L.P. R.A. secs. 2051 y 551, el DACO adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797 del 28 de septiembre de 1992, que tiene como propósito asegurarle al consumidor que adquiere un vehículo de motor, que el mismo sirva los propósitos para los que es adquirido y que reúna las condiciones mínimas necesarias, para garantizar la protección de su vida y propiedad. Véase Artículo 2, Reglamento Núm. 4797, *supra*.

El inciso 3 del Artículo 21 del Reglamento dispone que el DACO podrá, a opción del consumidor, decretar la resolución del contrato o reducir proporcionalmente su precio de venta. Ello, de acuerdo a las disposiciones del Código Civil de Puerto Rico, en aquellos casos en que el vendedor o su representante, dentro de los términos de la garantía, tiene la oportunidad razonable de reparar uno o más defectos, pero no lo hace o no puede corregirlos. Lo que constituye oportunidad razonable para reparar, se determinará tomándose en consideración las circunstancias particulares de cada caso.

Nada de lo dispuesto en el Reglamento del DACO limita en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios ocultos y la acción redhibitoria que reconoce nuestro Código Civil. Artículo 35, Reglamento Núm. 4797, *supra*.

## -C-
## La Revisión de las Determinaciones de las Agencias Administrativas

Reiteradamente, el Tribunal Supremo de Puerto Rico ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son ellas las que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Otero v. Toyota*, 163 D.P.R. ___ (2005), **2005 J.T.S. 13**; *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. ___ (2004), **2004 J.T.S. 4**; *Pacheco Torres v. Estancias de Yauco*, 160 D.P.R. ___ (2003), **2003 J.T.S. 148**; *González Santiago v. Fondo del Seguro del Estado,* 118 D.P.R. 11 (1986).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, supra.* Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors Inc., supra; Metropolitana S.E. v. A.R.P.E.,* 138 D.P.R. 200, 213 (1995); *Facultad v. Consejo de Educación Superior,* 133 D.P.R. 521, 532 (1993). Como ha definido en diversas ocasiones nuestro más Alto Foro, evidencia sustancial es *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión"*. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 131 (1998); *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953).

Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra.* Debe demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.*

Las determinaciones de hechos de organismos y agencias *"tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas"*. *Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987); *Facultad v. Consejo de Educación Superior, supra*, pág. 532.

El tribunal podrá sustituir el criterio de la agencia por el propio, sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra*, pág. 134.

Podemos decir que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, *Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Reyes Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85 (1997); y (3) cuando ha mediado una actuación irrazonable o ilegal. La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos. *Otero v. Toyota, supra.* Véase, además, Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, Bogotá, Colombia, 2da. Ed., 2001, pág. 543.

## IV

**Análisis y Conclusión**

La recurrente sostiene que la prueba desfilada en el presente caso no es suficiente para decretar la resolución del contrato de compraventa celebrado entre las partes. Aduce que los defectos que tenía la unidad al momento de la compraventa fueron ocasionados en las facilidades del distribuidor por lo que no pueden considerados como vicios. Alega, además, que cuando se le entregó la unidad a García Reyes, ésta conocía de los defectos que la misma tenía, dato evidenciado con el crédito de $3,900.00 que se le otorgó a la recurrente, según la evidencia desfilada durante la vista.

Del análisis de los documentos que constan en el expediente administrativo y de la prueba oral desfilada ante el DACO, surge que los $3,900.00 que García Reyes alega que entregó como pronto pago, fueron en realidad un crédito (descuento) que la recurrente le otorgó a ésta al momento de la compraventa. Esta dato lo evidencia tanto la *"Hoja de Descripción de la Venta"* –que forma parte de los documentos presentados en evidencia ante el DACO- y la inexistencia de un recibo que demuestre que el pago alegado fuese efectuado. Hay que destacar, además, que en la *"Hoja de Descripción de la Venta"*, que está firmada por García Reyes, el vendedor Iván Casiano Sánchez hizo la siguiente anotación: ***"Cliente tiene conocimiento que la unidad se le reemplazó guardalodo y bumper delantero y luego se pintó al frente. 9/28/02"*** Esta información también fue confirmada por el vendedor Casiano Resto quien declaró que García Reyes no entregó pronto pago alguno al momento de la compraventa.

Precisa señalar, además, que en una situación como ésta el peso de la prueba de demostrar el pago realizado correspondía a García Reyes; no presentó evidencia alguna en apoyo a su alegación. No podemos sostener una alegación que no está apoyada en el expediente administrativo. *Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra.*

El Contrato de Ventas al Por Menor a Plazos y Pagaré no puede ser considerado como evidencia única y suficiente para probar el pago de los $3,900.00 como pronto pago, ya que en el mismo no se refleja necesariamente las negociaciones extrínsecas al documento que el vendedor y el comprador sostuvieron como parte de la compraventa.

En cuanto a la determinación del DACO sobre la resolución del contrato otorgado entre las partes y la orden

de restitución de las prestaciones, la recurrente alega que dicha agencia incidió. Sostiene que al momento de la compraventa le informó a García Reyes de los desperfectos de la unidad y le otorgó un crédito en el valor de la misma por ello; que en enero de 2003, García Reyes llevó el vehículo con los desperfectos y que los mismos fueron reparados; que García Reyes se negó a recibir el vehículo una vez fue notificada de que las reparaciones habían sido realizadas; y que todos los desperfectos de la unidad fueron reparados a satisfacción de los peritos del DACO y del perito de la propia García Reyes. En virtud de estas alegaciones, la recurrente aduce que el DACO no puede determinar que se menoscabó sustancialmente el uso, valor o seguridad del vehículo.

De la prueba que obra en el expediente administrativo surge que los desperfectos por los cuales García Reyes solicitó, y el DACO decretó, la rescisión del contrato de compraventa fueron corregidos. El propio perito de García Reyes, Carlos J. Rivera Ortega, señaló que para la segunda inspección realizada en el trámite administrativo, todos los defectos de la unidad habían sido corregidos. Ante esta situación no procedía que se determinara la resolución del contrato.

La prueba evidencia que el vehículo estaba reparado desde antes del 7 de febrero de 2003, fecha en que el Sr. Félix D. Ríos, Gerente del Lote de Juncos, le remitió una carta a García Reyes en la que le reiteraba el pedido para que recogiera la unidad, certificándole a su vez que la misma estaba en condiciones óptimas. No obstante, García Reyes no recogió la unidad hasta el 3 de febrero de 2005.

Somos de opinión que los defectos de la unidad no imposibilitaron su uso, toda vez que los mismos fueron reparados. En cuanto a esta determinación, el DACO erró; el daño que tenía la unidad no la hacía inservible para su uso. No se trata de un caso de vicios redhibitorios. *Polanco López v. Cacique Motors, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., supra; Gorbea v. Tribunal Superior, supra.* Además, es claro que al momento de la compraventa, García Reyes conocía que el vehículo había sufrido desperfectos.

## V
**Disposición del Recurso**

Por los fundamentos antes expuestos, se revoca la resolución emitida por el Departamento de Asuntos del Consumidor en el presente caso.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 75

**1.** Véase Exhibit #5 del Apéndice de la recurrente.

**2.** Por error o inadvertencia, esta querella fue titulada como enmienda en el DACO, Oficina Regional de Caguas.

**3.** Del expediente ante nuestra consideración no surge copia de la querella presentada por la señora García Reyes en el DACO, Oficina Regional de San Juan. Tomamos conocimiento de la presentación de la misma, ya que así surge de la resolución emitida por el DACO el 28 de enero de 2005. Esta querella, para todos los efectos prácticos, es como un traslado de querella de una oficina regional a otra, en este caso de Caguas a San Juan.

**4.** Véase Transcripción de la Prueba, Vista Administrativa del 24 de enero de 2005, págs. 102-103.