RICHARD W. COOPER AGENCY, INC. v. IRWIN YACHT AND MARINE COR-
PORATION AND SAILOR'S HAVEN, INC.

No. 796SC651

(Filed 15 April 1980)

1. **Uniform Commercial Code § 10— warranties of fitness and merchantability—
no privity between buyer and manufacturer**

    Where plaintiff buyer brought an action to recover for a defective boat manufactured by defendant, there was no basis for plaintiff's claims of breach of implied warranty of merchantability (G.S. 25-2-314) and breach of implied warranty of fitness for a particular purpose (G.S. 25-2-315), since those implied warranties are based on contractual theory, and there was no privity of contract between plaintiff buyer and defendant manufacturer.

2. **Uniform Commercial Code § 11— manufacturer's express warranty—privity in
sale of goods not required**

    Privity in the sale of goods is not necessary in a purchaser's action on a manufacturer's express warranty relating to the goods.

3. **Uniform Commercial Code § 11— breach of express warranty alleged—improp-
er measure of damages used—directed verdict improper**

    Where the measure of damages under the express warranty of defendant manufacturer was the cost of repair and replacement in correcting any defects in material or workmanship discovered and proven during the one-year warranty period, but plaintiff offered evidence of damages under the general (difference in value) rule, a directed verdict on the ground that plaintiff failed to offer evidence of repair and replacement costs would be improvident, since there was some evidence which would entitle plaintiff to recover nominal

damages at least, and since evidence of the difference in value of the property as warranted and as delivered would, in certain circumstances such as where a new good is involved, also shed some light on the cost of repair and replacement to correct the defects in materials or workmanship.

APPEAL by plaintiff from *Peel, (Elbert S.) Judge.* Judgment entered 31 May 1979 in Superior Court, BERTIE County. Heard in the Court of Appeals 31 January 1980.

Plaintiff alleged the purchase of a sailboat with an inboard motor on 2 December 1976 from Sailor's Haven, Inc., sales agent for Irwin Yacht and Marine Corporation; that the boat was delivered to plaintiff on 5 January 1977; and, that various defects were discovered, including massive leaks and failures in both the engine and the entire electrical system. Plaintiff alleged breaches of express warranty, of implied warranty of merchantability, and of implied warranty of fitness for a particular purpose. Plaintiff sought damages in the sum of $6,000.

In its answer defendant Irwin Yacht pled various defenses including exclusions from the express warranty such as the engine, which it did not make, and defects which were the responsibility of the sales agent to correct.

Defendant Irwin Yacht filed a third-party complaint against Sailor's Haven for any damages recovered by plaintiff for any defects which were its responsibility to correct.

The express warranty of defendant Irwin Yacht provided that the boat was warranted for a period of 12 months from delivery, and that parts manufactured by it proven to be defective in materials or workmanship would be repaired or replaced. Warranty exclusions included items which were the responsibility of the sales agent as well as parts not manufactured by Irwin Yacht such as the engine and marine heads. Implied warranties of merchantability and fitness for a particular purpose were limited in duration to one year.

SUMMARY OF PLAINTIFF'S EVIDENCE

Plaintiff paid $18,200 for the 26-foot boat. The boat was delivered to plaintiff at the third-party defendant's sales office in Deerfield Beach, Florida, on 2 December 1976, and was transported by truck to Edenton, North Carolina. When the boat

---

---

arrived in Edenton, the centerboard was missing. Plaintiff bought another centerboard but on 7 June 1977 the second centerboard was lost. Examination revealed that the pressure pin securing the centerboard was installed upside down and the winch spring was defective.

The entire electrical system was defective. The alternator and regulator became inoperable on 27 June, and the system had to be operated with fresh batteries. The wiring to the engine was too small and thereby created a fire risk.

There were massive leaks in the hull around the forward seacock and through the rudder shaft packing. Rain water also leaked in through the companionway hatch and through the starboard turnbuckles.

The engine emitted sludge and heavy black exhaust. The fuel line broke in September 1977, and, in October 1977, the fuel pump stopped operating.

It was the opinion of several witnesses that the fair market value of the boat when delivered in its defective condition was $8,000.

#### SUMMARY OF DEFENDANT'S EVIDENCE

Jerry Carlson, warranty administrator for defendant Irwin Yacht testified that the engine wiring was the responsibility of Mastery Marine; that defendant did not install the wiring; that the alternator is a part of the engine which defendant Irwin Yacht installed; that only two claims were made by plaintiff under the warranty; that the sum of $54.00 was paid by defendant to replace fuel lines and to correct the mast depth; and, that $278.00 was paid to repair the engine. Carlson also stated that the leak problems were minor and that he had not seen the boat after delivery.

At the close of all the evidence the trial court allowed defendant's motion for directed verdict.

*Pritchett, Cooke & Burch by Stephen R. Burch and W. W. Pritchett, Jr., for plaintiff appellant.*

*Hutchins, Romanet, Thompson & Hillard by Charles T. Busby for defendant appellee Irwin Yacht and Marine Corporation.*

CLARK, Judge.

In determining whether this action should be dismissed, it is noted at the outset that plaintiff is a buyer and defendant Irwin Yacht is both a manufacturer and an assembler of component parts. The seller, Sailor's Haven, was not made a party-defendant by plaintiff but was made a third-party defendant by original defendant Irwin Yacht for indemnification on the ground that some of the defects alleged by plaintiff were the responsibility of the seller.

[1]  Assuming North Carolina law applies, we eliminate, first, plaintiff's claim based on breach of implied warranty of merchantability (G.S. 25-2-314), and, second, the claim based on breach of implied warranty of fitness for a particular purpose (G.S. 25-2-315), because these implied warranties are based on contractual theory and there is no privity of contract between the plaintiff-buyer and defendant-manufacturer. At least one exception to the strict rule of privity where warranty is implied has been recognized in North Carolina: when the manufacturer of food, drink and insecticides in sealed containers are introduced in commerce. *Tedder v. Bottling Co.*, 270 N.C. 301, 154 S.E. 2d 337 (1967); *Terry v. Bottling Co.*, 263 N.C. 1, 138 S.E. 2d 753 (1964). The case before us, however, does not fall within this exception.

The foregoing references to the Uniform Commercial Code (Ch. 25, Gen. Stat. of North Carolina) apply to sales contracts between the buyer and seller. The Code also has provisions dealing with express warranties (primarily G.S. 25-2-313 and 2-719) but the Code is limited in scope and direct purpose to warranties made by the seller to the buyer as part of the contract of sale. 63 Am. Jur. 2d, Products Liability § 163 (1972). There is a substantial question as to whether it would be appropriate in light of § 110(f) of the Federal Magnuson-Moss Warranty Act of 1975, 15 U.S.C. §§ 2301-2312, Pub. L. 93-637 (1975) to interpret the word "Seller" in § 2-313 of the Uniform Commercial Code to include a manufacturer (or anyone else) who issues an express warranty. *See* 3 Bender's U.C.C. Service § 6.11[6] (1976). *See generally,* Eddy, *Effects of the Magnuson-Moss Act Upon Consumer Product Warranties,* 55 N.C.L. Rev. 835 (1977).

[2]  We do not, however, have to decide at this time whether § 2-313 of the Uniform Commercial Code applies in the case *sub*

*judice.* Plaintiff's third claim is based on the breach of an express warranty which plaintiff contends is a representation by the manufacturer directly to the plaintiff-buyer. The difficult history in North Carolina of the requirement of privity in warranty actions was reviewed recently in *Kinlaw v. Long Mfg. Co.*, 298 N.C. 494, 259 S.E. 2d 552 (1979), and it was held that privity in the sale of goods is not necessary in a purchaser's action on a manufacturer's express warranty relating to the goods. It is noted that the *Kinlaw* decision antedated the judgment in this case before us by a period of about six months.

The absence of privity between plaintiff and defendant Irwin Yacht is therefore not fatal to the claim for breach of the express warranty under North Carolina case law. The plaintiff offered evidence tending to show that it bought a new sailboat which was expressly warranted by defendant-manufacturer to be free of defects in materials or workmanship within the limits and upon the terms specified in the "Limited Warranty" furnished with the boat, that there was a breach of warranty, and that it suffered damages caused by the breach.

The recently enacted Products Liability Act of 1979, Chapter 99B of the North Carolina General Statutes, effective 1 October 1979, is not applicable to this and other actions pending at the effective date. The act expands the "buyer" horizontally to include the buyer's guest or employee and eliminates privity in the buyer's products liability action against the manufacturer for breach of implied warranty.

[3] The defendant makes the argument that directed verdict was proper because plaintiff failed to offer competent evidence of damage. We find no merit in this argument. The plaintiff offered evidence of damages consisting of the difference at the time and place of acceptance between the value of the boat accepted and the value it would have had if it had been so warranted. This measure of damages applies generally to the breach of a contract for sale of personal property. (*See* G.S. 25-2-714(2), for measure of damages for breach of warranty under the Uniform Commercial Code.) This action, however, is by plaintiff-buyer against defendant-manufacturer under an express warranty, which provides for a remedy in substitution for the general rule of damages applicable to breach of contract for sale of personal property. The

remedy provided for in the express warranty is controlling at least where such provisions meet the general tests of legality. 63 Am. Jur. 2d *Products Liability* § 227 (1972). See for analogy, the Uniform Commercial Code, G.S. 25-2-719, measure of damages where an express warranty limits the remedy.

The measure of damages under the express warranty of the defendant Irwin Yacht is the cost of repair and replacement in correcting any defects in material or workmanship discovered and proven during the one-year warranty period. The plaintiff in this case offered evidence of damages under the general (difference in value) rule. Nevertheless, since there was some evidence which would entitle plaintiff to recover nominal damages at least, a directed verdict on the ground that plaintiff failed to offer evidence of repair and replacement costs would be improvident. Further, though the measure of damages for tortious injury to personal property is the difference in the market value of the property immediately before and immediately after the injury, the cost of repairs may be shown, because the law recognizes that the cost of repairs has a logical tendency to shed light upon the question of the difference in market value. *Simrel v. Meeler*, 238 N.C. 668, 78 S.E. 2d 766 (1953). On the other hand, the difference in value of the property as warranted and as delivered would, in certain circumstances, such as where a new good is involved, also shed some light on the cost of repair and replacement to correct the defects in materials or workmanship. The judgment dismissing plaintiff's action is reversed and we remand for a new trial.

The foregoing discussion concerns the application of North Carolina law. The record on appeal, however, indicates that the sale was made in the State of Florida. As a general rule, liability is determined in accordance with the law of the place of sale, *Land Co. v. Byrd*, 299 N.C. 260, 261 S.E. 2d 655 (1980); 63 Am. Jur. 2d *Products Liability* § 213 (1972), but this general rule may be abrogated by contract. *Land Co. v. Byrd, supra.* Both parties apparently assume that North Carolina law is controlling. Since the issue of which state law should be given effect is not raised, we do not rule on the question at this time. We do note that under Florida law that plaintiff may state a claim against an assembler of component parts for breach of implied warranty. *Favors v. Firestone Tire & Rubber Co.*, Fla. App., 309 So. 2d 69 (1975).

The question of whether the law of North Carolina, the law of Florida, or the Magnuson-Moss Act are applicable are appropriate for consideration on remand for a new trial.

The judgment is

Reversed and remanded.

Judges VAUGHN and HEDRICK concur.