Bernard A. KAPLAN;  James J. Shipley; Norma Kaplan;  Edward Englander, Appellants,

v.

RCA CORPORATION, a Delaware corporation, Appellee.

No. 85–1536.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1985.

Decided Feb. 13, 1986.

Thomas P. Mains, Jr., Alexandria, Va., for appellants.

William L. Auten, Charlotte, N.C. (J.W. Alexander, Jr., Blakeney, Alexander & Machen, Charlotte, N.C., on brief), for appellee.

Before WINTER and PHILLIPS, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, sitting by designation.

MOTZ, District Judge:

This action arises from the purchase by Metrolina Communications Corporation, a company controlled by appellants Bernard Kaplan and James J. Shipley, of an FM radio transmitting antenna from RCA.[1] After conducting a jury trial on one issue and holding an evidentiary hearing on the others, the district court entered a judgment in favor of RCA. Appellants raise three substantive issues on this appeal: (1) whether RCA's standard Terms and Conditions of Sale were part of the contract between the parties; (2) whether one of those terms and conditions, limiting RCA's warranty responsibilities to repairing or replacing defective parts, failed of its essential purpose; and (3) whether another of the terms and conditions, disclaiming liability for consequential damages, is unconscionable and void. Intertwined among appellants' arguments on the first two issues is a contention that the district court improperly resolved certain factual disputes instead of submitting them to the jury.

### FACTS

In 1979 Kaplan and Shipley purchased radio station WOOO–FM in Statesville, North Carolina. Before making the purchase and deciding on the site on which to build their antenna tower, they hired a professional radio engineer to study whether they could obtain adequate signal coverage in the areas in which they wished to broadcast. In response to a request from this engineer, RCA submitted to Shipley a proposal for a study of the signal pattern likely to be achieved by an antenna constructed by RCA. Shipley accepted RCA's proposal on behalf of Metrolina.

By letter dated November 26, 1979, after completing its pattern study, RCA wrote to Shipley quoting the current price for an antenna and indicating that "we will be pleased to issue a formal proposal at your request." Kaplan and Shipley, who had in the meantime consummated their purchase of the station and the tower site, were awaiting FCC approval of the modifications to the station, including change of the location, height of the tower and an increase in the output, before ordering the antenna. When this approval was obtained, Shipley called Mr. Strubel at RCA with whom he had been dealing and advised him that "we can now go ahead and do this thing." Strubel replied that he would expedite the transaction but Mr. Huffman had to approve it. By letter dated July 31, 1980, Huffman sent Shipley a proposal for the purchase and sale of the antenna.

The cover folder to the proposal stated that RCA proposed "to furnish the equipment and services described on Schedule A of this proposal, subject to the terms and conditions of sale contained herein." Among the materials contained in the folder was one entitled "Terms and Conditions of Sale, Broadcast and Teleproduction Equipment BC–08444." The Terms and Conditions limited RCA's warranty to repair or replacement of the antenna and disclaimed liability for consequential damages. They also provided that "this agreement expresses the entire intent and understanding of the parties with reference to the subject matter hereof." Substantially the same document had been part of the proposal for the pattern study which Shipley had earlier signed and accepted.

After receiving the antenna proposal Shipley called Huffman and requested that the price—which had increased from the quotation in the November 26, 1979 letter—be reduced to the original figure. Huffman indicated that he did not have the authority to make this decision but that he would try to "sell" the idea to his superiors. Shipley then directed Metrolina's secretary/treasurer, LaVelle, to sign the ac-

---

1. Metrolina has gone out of business and has been liquidated. After this suit was filed, its shareholders, Bernard and Norma Kaplan, James J. Shipley, and Edward Englander were substituted as plaintiffs.

ceptance of proposal form, modifying only the price term. The acceptance form stated that "we accept your proposal to furnish equipment and services described on Schedule A of BC 08444 dated July 30, 1980, subject to the terms and conditions of sale contained therein." By letter dated September 26, 1980, RCA accepted the reduced price.

RCA constructed and delivered the antenna, and it went into operation at the beginning of February, 1981. A transmission problem immediately developed and Shipley complained to RCA. In April RCA investigated the problem and concluded that there was a defect in the antenna adversely affecting the transmission of signals toward Statesville. Eventually, RCA provided a replacement antenna. However, RCA never admitted that there was any defect in the antenna affecting signal transmission toward Charlotte. It attributed the poor coverage of WOOO–FM in Charlotte to other factors, including the site which Kaplan and Shipley had purchased (at substantial savings in cost) for the placement of the antenna tower.

Because of the poor coverage in Charlotte, Metrolina's advertising revenues shrank and its financial difficulties became insurmountable, prompting the sale of the station in 1982. This action, in which appellants claim 3.75 million dollars in compensatory damages and 7.5 million dollars in punitive damages, ensued.

## I.

■ Appellants first argue that the parties entered into a binding agreement for the purchase and sale of the antenna before RCA submitted its formal proposal on July 31, 1980, and that the "Terms and Conditions of Sale," which were contained in the formal proposal did not become part of the parties' contract because they materially altered the prior agreement. Alternatively, they contend that the Terms and Conditions did not become part of the contract because the acceptance of proposal form signed by Metrolina did not refer to them.

As a preliminary matter, we note that New Jersey law is applicable to this case. The Terms and Conditions provide that "this Agreement shall be construed and enforced under the law of the State of New Jersey." North Carolina, whose conflict of law rules we must apply, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), permits the parties to a contract to stipulate the state whose law is to govern a contract if that state has a reasonable relationship to the transaction. *N.C.Gen.Stat.* Section 25–1–105 (1966); *cf. Bernick v. Jurden*, 306 N.C. 435, 293 S.E.2d 405 (1982); *see also Tanglewood Land Co. v. Byrd*, 299 N.C. 260, 261 S.E.2d 655, 656 (1980); *Richard W. Cooper Agency, Inc. v. Irwin Yacht and Marine Corp.*, 46 N.C. App. 248, 264 S.E.2d 768, 772 (1980). There is such a relationship here. RCA maintains its principal offices in New Jersey, the contract documents were prepared (and finally accepted) in New Jersey and the antenna was designed, engineered and tested there.

■ On the merits it is clear that there was no contract between the parties before RCA sent out its formal proposal. Prior to that time no terms or conditions of sale had been agreed to by the parties either orally or in writing. Indeed, the price of the antenna was not agreed to until after Metrolina had signed the acceptance of proposal.

It is equally clear that the Terms and Conditions were part of the parties' contract. Appellants' primary thrust below was that the Terms and Conditions had not been included among the materials in the proposal. Shipley denied having received them. However, the jury—on the basis of overwhelming evidence—disbelieved him and, in response to a special interrogatory, found that RCA's terms and conditions were included in the package sent to him. Appellants now rely upon more technical grounds. They point to the language in the acceptance of proposal that "we accept your proposal to furnish equipment and services described on Schedule A of BC

08444 dated July 30, 1980 subject to the terms and conditions of sale contained *therein.*" They argue that Schedule A itself does not contain the terms and conditions limiting RCA's warranty and excluding its liability for consequential damages.

Considered alone, the quoted language might appear to support plaintiffs. However, the contract documents as a whole establish beyond doubt that the terms and conditions referred to are the separate Terms and Conditions contained in the proposal package. The cover folder to the proposal states that RCA will "furnish the equipment and services described on Schedule A of this proposal, subject to the terms and conditions of sale contained *herein.*" The proposal number is included in the title of the separate Terms and Conditions. Moreover, Schedule A merely describes the antenna and states the price.

Appellants make a related argument that the district court too narrowly framed the issue to be decided by the jury on this point. The jury was asked to find whether RCA had sent the Terms and Conditions to Metrolina with Huffman's confirmatory letter of July 31, 1980. Appellants argue that the jury should have been asked to find whether the terms and conditions were expressly accepted by Metrolina. Appellants did not specifically object to the issue as submitted to the jury by the court as required by *Fed.R.Civ.P.* 49(a). Furthermore, after the trial, they submitted a memorandum stating that one of the issues which remained to be *determined by the court* was whether the Terms and Conditions became part of the parties' contract. In any event, as Shipley himself recognized by his denial, the critical fact was precisely the one determined by the jury: whether

the terms and conditions were included in the proposal which Shipley received. The jury's "yes" answer to that question is dispositive.

## II.

■ Appellants next argue that RCA's limited warranty to repair or replace the antenna failed of its essential purpose and that its disclaimer of consequential damages is therefore void. Again, they make an ancillary contention that the district court improperly made factual findings on matters that should have been submitted to a jury. Again, they have not preserved the latter point for appeal. To the contrary, in their post-trial memorandum they specified as one of the issues remaining for determination by the court "did the limited warranty fail of its essential purpose?" [2]

Section 2–719(1) of the Uniform Commercial Code authorizes contracting parties to limit otherwise available remedies. New Jersey law incorporates this provision. *N.J.Stat.Ann.* section 12A:2–719(1). New Jersey law also incorporates section 2–719(2) of the U.C.C. which provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." *N.J.Stat.Ann.* section 12A:2–719(2). Appellants argue that RCA's warranty failed because RCA did not correct the defects in the original antenna within a reasonable period of time.

While the timeliness of remedial measures is relevant to the question of whether the warranty has been effective, *see, e.g. Chatlos Systems, Inc. v. National Cash Register Corp.,* 635 F.2d 1081 (3rd Cir. 1980), the district court, after holding an

---

**2.** Appellants also complain of a subsequent memorandum opinion rendered by the district court finding in favor of RCA's counterclaim on the $6,893.34 balance due on the antenna's purchase price. They allege that in this opinion too the judge made findings that should have been made by the jury. However, the district court specifically noted in its opinion that they had informed the court that they did not wish the questions raised by the counterclaim to be tried before a jury. Further, in its July 11, 1985

order stating its intention to rule on the counterclaim, the court invited further submissions on the issues raised. The parties declined to do so. Although appellants may have misunderstood which factual questions the court would consider in resolving the counterclaim, the court's findings pertained to material issues and appellants cannot now retract their jury trial waiver. *See United States v. 1966 Beechcraft Aircraft,* 777 F.2d 947, 951 (4th Cir.1985).

evidentiary hearing, found that RCA had replaced the antenna within a reasonable period. This finding was supported by the evidence and is not clearly erroneous. Further, a finding that the repair and replacement warranty had failed would not void RCA's exclusion of consequential damages provision as well. Although some courts have adopted that position, *e.g. R.W. Murray Co. v. Shatterproof Glass Corp.*, 758 F.2d 266, 272 (8th Cir.1985); *Beal v. General Motors Corp.*, 354 F.Supp. 423, 426 (D.Del.1973), New Jersey law is to the contrary. *Chatlos Systems, Inc.*, 635 F.2d at 1085-86; *see also AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir.1978). Accordingly, even if RCA's repair and eventual replacement of the antenna had been found to be ineffective, appellants would have been entitled only to the alternative remedy provided for by the contract—the refund of the purchase price.

### III.

 Appellants' final contention is that the provision in the Terms and Conditions disclaiming liability for consequential damages is unconscionable and void under *N.J. Stat.Ann.* section 12A:2-719(3). This contention is without merit.

The factors determining "unconscionability" are various: the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause. *See, e.g., Chatlos Systems, Inc.*, 635 F.2d at 1087; *Abel Holding Co. v. American District Tele. Co.*, 138 N.J.Super. 137, 350 A.2d 292, 303-05 (1975); *cf. Herbstman v. Eastman Kodak Co.*, 131 N.J.Super. 439, 330 A.2d 384, 388-89 (1974).

None of these factors dictate a finding of unconscionability here. The losses suffered by Metrolina were commercial. While Metrolina was a small company compared to RCA, Shipley had been in the radio business for forty years and Kaplan and Shipley had business acumen and experience. Nothing required appellants to deal with RCA; they could well have purchased the antenna from another manufacturer. They had hired expert consultants for advice concerning the engineering. Nor was the clause excluding liability for consequential damages "lost in a linguistic maze" or a surprise to appellants. The type was bold-faced and was capitalized and had been included in the parties' prior contract for the pattern study. Furthermore, the clause was reasonable. RCA certainly did not have to subject itself to multi-million dollar liability for consequential losses by supplying a radio antenna for $12,000. It could, as it did, properly allocate that risk to Metrolina.

AFFIRMED.