**Alma SIMONET, on behalf of Herself and all others similarly situated, Plaintiff,**

**v.**

**SMITHKLINE BEECHAM CORP. d/b/a GlaxoSmithKline, et al., Defendants.**

**Civil No. 06–1230 (GAG).**

United States District Court, D. Puerto Rico.

Aug. 3, 2007.

Carlos R. Ramirez, Esq., John F. Nevares, Esq., San Juan, PR, for Plaintiff.

Rossell Barrios–Amy, Esq., San Juan, PR, for Defendant.

## OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

Alma Simonet ("Simonet"), the only named plaintiff in this proposed nationwide consumer class action, filed suit on March 6, 2006 against Defendants Smith-Kline Beecham Corporation d/b/a GlaxoS-mithKline, GlaxoSmithKline Puerto Rico, Inc., and SB Pharmco Puerto Rico, Inc. (collectively "GSK") alleging claims under several state law theories. She invoked the court's diversity jurisdiction under 28 U.S.C. § 1332. On June 29, 2006, Simonet filed her Amended, Supplemental and Restated Class Action Complaint and Jury Demand ("Amended Complaint") (Docket No. 26). Plaintiff's claims arise out of the purchase and ingestion of allegedly defective Paxil® CR ("PaxilCR") tablets. Counts One and Two of the Amended Complaint assert negligence and strict liability claims. Counts Three and Four seek economic recovery under breach of warranty theories. Count Five alleges fraudulent misrepresentation, while Count Six asserts a fraudulent concealment claim. Finally, Count Seven seeks damages under the consumer protection statutes enacted in Puerto Rico and the United States.

GSK moved to dismiss Simonet's fraud claims under Rule 9(b) under the Federal Rules of Civil Procedure and all other claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Docket No. 33). Simonet duly opposed the motion (Docket No. 43). GSK and Simonet filed a reply (Docket No. 52) and a surreply (Docket No. 60), respectively. The parties also submitted additional briefing (Docket Nos. 61, 66) regarding Simonet's claim for statutory consumer protection damages. After reviewing the relevant information and applicable law, the court **DENIES IN PART** and **GRANTS IN PART** GSK's motion to dismiss (Docket No. 33).

## I. 12(b)(6) Motion to Dismiss Standard

Pursuant to Rule 12(b)(6), the court must deny a motion to dismiss for failure to state a claim on which relief may be granted "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Epstein v. C.R. Bard, Inc.,* 460 F.3d 183, 187 (1st Cir.2006). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inference in the plaintiff's favor.[1] *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

■ GSK's motion to dismiss primarily attacks the sufficiency of the claims asserted by Simonet, the only named plaintiff. The court has not yet certified a class in this proposed class action. At this stage of the litigation, the court must dismiss the complaint in its entirety if the named plaintiff has no cause of action in her own right. A named plaintiff who cannot establish her own case may not seek relief on behalf of other class members. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Britt v. McKenney,* 529 F.2d 44, 45 (1st Cir.1976). Therefore, if Simonet's Amended Complaint fails to state a claim upon which relief can be granted, then Rule 12(b)(6) mandates dismissal of the class action complaint in its entirety.

## II. Factual Allegations

GSK manufactures and sells paroxetine under the name PaxilCR. PaxilCR is a pharmaceutical drug prescribed to treat depression, anxiety, and other mental health disorders. The "CR" in the drug's title is an abbreviation for "controlled release." As the name suggests, PaxilCR tablets are intended to deliver the active ingredient over a period of time and not all at once. Additionally, an enteric coat on the tablets delays the release of the active ingredient until the tablets have left the stomach. Before and after the United States Food and Drug Administration ("FDA") discovered violations of good manufacturing practice ("GMP") regulations in the manufacture of PaxilCR, GSK circulated marketing materials, including package inserts, prescribing information, and the Physicians Desk Reference ("PDR"), that represented PaxilCR tablets as safe and effective for treatment of patients and that described the controlled release effect. Notwithstanding, Simonet ingested PaxilCR tablets that provided neither the controlled release effect nor effective treatment.

---

1. Under certain circumstances, the court may consider materials outside of the complaint when analyzing a Rule 12(b)(6) motion to dismiss. Where "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Perry v. N. Eng. Bus. Serv.,* 347 F.3d 343, 345 n. 2 (1st Cir.2003). The court may also consider matters susceptible to judicial notice. *In re Colonial Mortgage,* 324 F.3d 12, 15 (1st Cir.2003). The court takes judicial notice of the following: the proceedings in *Cole v. SmithKline Beecham Corp,* Case No. 04CC00653, Superior Court of the State of California, County of Orange; the proceedings in the forfeiture action, Civil No. 05–1221(HL) in the United States District Court for the District of Puerto Rico; and the legislative history of Law No. 118 of June 25, 1971 ("Law 118"), as amended, P.R. Laws Ann. tit. 32, §§ 3341–3344. Furthermore, the following documents merge into the Amended Complaint: the March 5, 2005 FDA press release, from which Simonet extensively quotes (Docket No. 33, Exh. E & Docket No. 43, Exh. 5); and the PaxilCR prescribing information, which is expressly linked to Simonet's express warranty allegations (Docket No. 43, Exh. 1). The court has not considered the additional outside documents relied on by GSK (Docket No. 33, Exhs. F–H; Docket No. 52, Exh. A). The court notes, however, that consideration of these documents would not have altered its conclusions.

GSK manufactures PaxilCR at a facility in Cidra, Puerto Rico. Since 1996, the Cidra manufacturing facility has failed to achieve consistent compliance with current GMP regulations imposed by the FDA. In July 2002, the FDA issued a warning letter to GSK identifying specific GMP violations found during an earlier inspection. The letter requested correction of the violations. GSK, in response, promised to take remedial steps. Subsequent FDA inspections in 2003 uncovered similar and additional GMP violations, which the FDA reported to GSK. Between December 2003 and May 2004, GSK again promised corrections.

FDA inspections conducted in September, October, and November 2004 revealed that GMP violations persisted. During its late 2004 inspections, the FDA discovered that PaxilCR tablets could split apart and patients could receive a portion of the tablets that lacks the active ingredient or a portion that contains the active ingredient but does not have the controlled release effect. GSK once again promised to correct the GMP violations. GSK also submitted data and corrective plans to the FDA.

The FDA determined that GSK's proposed corrective actions would not remedy the GMP violations. The FDA concluded that the PaxilCR tablets were adulterated within the meaning of the Federal Food, Drug, and Cosmetic Act ("the Act"), 28 U.S.C. § 351(a)(2)(B). Additionally, the FDA determined that GSK could not assure that the tablets met the safety requirements of the Act or that the drugs exhibited the identity, strength, quality, and purity they purport to possess. Consequently, on March 4, 2005, the FDA initiated seizures of PaxilCR tablets manufactured at the Cidra facility. The same day, the FDA issued a press release notifying the press of the seizures. The press release stated that the FDA was not aware of any health hazard to consumers and that patients should continue taking PaxilCR. On April 27, 2005, the FDA and GSK entered into a consent decree.

Simonet was prescribed, purchased, and took defective PaxilCR tablets between 1996 and March 4, 2006. She ingested defective PaxilCR tablets that split apart. When the tablets split apart, the enteric coat broke up and the tablets released the active ingredient while still in her stomach. She either received the active ingredient without the benefit of controlled release or received only the controlled release ingredients and not the active ingredient. The defective PaxilCR tablets did not provide the intended therapy. As a result of ingesting defective tablets, Simonet continued to suffer the symptoms of their illnesses and incurred expenses and economic losses.

GSK's representations in their marketing materials were material reasons why Simonet was prescribed, purchased, and took PaxilCR tablets. PaxilCR marketing materials included representations that the tablets were of a merchantable quality, fit, safe, and otherwise not injurious to the health and well-being of consumers. The marketing materials also represented that the tablets are capable of providing the appropriate therapy. In addition, the materials described PaxilCR as an enteric film-coated, controlled release tablet that must be swallowed whole to provide the controlled release effect. The defective PaxilCR tablets Simonet ingested did not adhere to the representations made in the marketing materials.

## III. Discussion

In accordance with the approach taken by Simonet and GSK, the court applies Puerto Rico law for purposes of evaluating whether the Amended Complaint states a claim upon which relief may be granted.

## A. Counts One and Two: Negligence and Strict Liability

■ GSK first argues that the economic loss rule bars Simonet's negligence and strict liability claims. *See Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.,* 449 F.3d 85, 87 (1st Cir.2006), *aff'g* 380 F.Supp.2d 74 (D.P.R.2005) (explaining economic loss rule and applying rule to Puerto Rico law claim). Simonet does not seek economic damages with respect to her negligence and strict liability claims; she seeks only a declaration of GSK's liability for personal injury damages caused by defective PaxilCR tablets. *See* Docket No. 26, p. 27; Docket No. 43, pp. 10–13. Consequently, the economic loss rule is inapplicable.

■ GSK next contends that the court should dismiss Simonet's negligence and strict liability claims because she failed to identify a compensable personal injury suffered by herself or any other class member. In order to survive a motion to dismiss her negligence and strict liability claims, Simonet must allege that GSK's conduct caused her some personal harm. *See Fremaint v. Ford Motor Co.,* 258 F.Supp.2d 24, 27 (D.P.R.2003) (setting forth elements of negligence cause of action); *Carballo Rodríguez v. Clark Equip. Co.,* 147 F.Supp.2d 66, 71 (D.P.R.2001) (discussing elements of strict products liability claim). Simonet's Amended Complaint, GSK argues, leaves GSK guessing as to what personal injuries Simonet suffered and how and why she suffered them. Simonet disagrees and points to specific language in her Amended Complaint stating that she "ingested defective Paxil CR® tablets that split apart." Docket No. 26,

¶¶ 30, 34. The Amended Complaint also states that Simonet "suffered injury because the tablets did not provide the controlled-release effect or, alternatively, did not provide the active ingredient." *Id.*

■ Simonet's negligence and strict liability claims rest upon her general allegation that she suffered personal injury because the defective PaxilCR tablets did not work in the intended manner and, consequently, left her to endure the symptoms of her illness.[2] *See* Docket No. 60, p. 2. To state it simply, she alleges that the PaxilCR tablets she took did not function properly; she, therefore, enjoyed no relief from the underlying condition that PaxilCR was intended to treat. Simonet does not allege that she or any class member endured any harmful side effects, suffered any adverse drug reactions, experienced any exacerbation or aggravation of symptoms, or otherwise suffered any physical harm as a result of ingesting PaxilCR tablets that split apart. She alleges only that PaxilCR did not function as it intended, and, therefore, it was not effective. Such allegations are sufficient to support a breach of warranty claim to recover economic damages but not to anchor a personal injury-based negligence or strict liability claim. The court, therefore, **GRANTS** GSK's motion to dismiss Simonet's negligence and strict liability claims.

## B. Counts Three and Four: Breach of Warranty

GSK contends that Simonet's express and implied warranty claims for economic losses cannot proceed because no contractual nexus exists between GSK and Simonet. GSK also argues that Simonet's com-

---

**2.** The "no defect, no injury" line of cases cited by GSK does not apply to Simonet's claims. *See, e.g., Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627–28 (8th Cir.1999) (dismissing action because plaintiff failed to allege that defect actually occurred or caused an

injury). Unlike the plaintiffs in the "no defect, no injury" cases, Simonet does allege that the product exhibited the alleged defect and caused an injury. *See* Docket No. 26, ¶¶ 30, 34.

plaint fails to identify any assertions that might give rise to an express warranty. Alternatively, GSK argues that the statute of limitations applicable to warranty causes of action bars all claims arising out of purchases made prior to September 6, 2005.

### 1. Privity

As frequently occurs in products liability cases, GSK raises a privity defense to Simonet's warranty actions. According to GSK, Simonet's express and implied warranty claims fail under Puerto Rico law due to lack of privity. Simonet does not contest that privity is lacking in this case. Rather, she argues that privity is not required under Puerto Rico law. She contends that Puerto Rico law does not require privity between a plaintiff-purchaser and defendant-manufacturer, even when a plaintiff seeks to recover only economic losses.[3]

The Puerto Rico Civil Code establishes an implied warranty cause of action. Under Article 1373, a seller warrants a good against defects that render the good unfit for the use to which it was intended or that so diminish its value that the purchaser would not have made the purchase or would have paid less had she known of the defect. *See* P.R. Laws Ann.

tit. 31, § 3841; *Garcia Viera v. Ciudad Chevrolet, Inc.*, 10 P.R. Offic. Trans. 200, 110 D.P.R. 158, 162 (1980) (per curiam); *Ferrer v. Gen. Motors Corp.*, 100 D.P.R. 246, 254–56 (1971). When the seller violates the warranty against hidden defects, the purchaser may choose to rescind the contract (redhibitory action)[4] or demand a proportional reduction of the sale price (*quanti minoris* action). P.R. Laws Ann. tit. 31, § 3843; *see also Julsrud v. Peche de P.R., Inc.*, 15 P.R. Offic. Trans. 23, 115 D.P.R. 18, 22 (1983); *Torres–Mas v. Carver Boat Corp.*, 233 F.Supp.2d 253, 255 (D.P.R.2002). A consumer may also pursue the redhibitory or *quanti minoris* remedy when a defective product does not comply with an express warranty. *See Ford Motor Co. v. Benet*, 6 P.R. Offic. Trans. 322, 106 D.P.R. 232, 237–38 (1977); *Nadal v. Hull Dobbs 65th Infantry Ford, Inc.*, 2 P.R. Offic. Trans. 847, 102 D.P.R. 653, 659–61 (1974) (per curiam).

Courts across the United States have struggled with the privity issue GSK raises. Courts are sharply split regarding whether privity is required in implied and express warranty actions when a buyer seeks only economic recovery. Many jurisdictions retain the privity requirement in an implied warranty action for economic loss.[5] Other jurisdictions, however, have

---

**3.** The parties do not dispute that Simonet's warranty claims for economic loss would fail if she had not *purchased* the defective PaxilCR tablets. *See Kunkel v. Motor Sport, Inc.*, 349 F.Supp.2d 198, 209–10 (D.P.R.2004) (rejecting implied warranty claim for economic recovery by non-purchasing plaintiff affected by defective product). *Kunkel* did not address the issue presented in this case—whether a *purchaser* who incurs economic losses may assert warranty claims against a remote manufacturer.

**4.** The redhibitory remedy is not applicable in cases where the object of the contract cannot be returned, for instance in the case of food or medicine which has been consumed by the purchaser making return physically impossi-

ble. *Castro v. Payco, Inc.*, 75 D.P.R. 63, 73 (1953).

**5.** In each of the following cases, a state court acknowledged the continuing viability of the privity requirement in implied warranty cases: *Rhodes v. Gen. Motors Corp.*, 621 So.2d 945, 947 (Ala.1993); *Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574, 633 P.2d 383, 387–88 (1981); *Hauter v. Zogarts*, 14 Cal.3d 104, 120 Cal.Rptr. 681, 534 P.2d 377, 383 n. 8 (1975); *Spolski Gen. Contractor v. Jett–Aire Corporate Aviation Mgmt.*, 637 So.2d 968, 970 (Fla.Dist.Ct.App.1994); *Bodymasters Sports Indus. v. Wimberley*, 232 Ga.App. 170, 501 S.E.2d 556, 561 (1998); *Royal Von Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 979 P.2d 1174, 1183 (1999); *Connick v. Suzuki Motor Co.,*

abandoned the privity requirement and now allow buyers to assert an implied warranty claim for economic loss against remote manufacturers.[6] *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 728 (5th Cir. 2007) (discussing state law variations regarding viability of implied warranty claim for economic loss when no privity exists between buyer and manufacturer). Courts have less strictly enforced the privity requirement in express warranty cases. Several jurisdictions that retain the privity requirement in implied warranty cases no longer require a direct contractual nexus to support all express warranty claims.[7] *See id.* (recognizing trend away from requiring privity in express warranty cases).

In this case, the court must consider whether Puerto Rico law requires contractual privity between buyers and manufacturers in implied and express warranty cases involving only economic losses caused by defective products.

■■■■■ The civil law tradition, Puerto Rico case law, and case law in other United States jurisdictions evince a trend away from requiring privity in consumer cases. *See Gorbea v. Tribunal Superior de P.R.*, 4 P.R. Offic. Trans. 193, 104 D.P.R. 138, 146–48 (1975) (Trías Monge, C.J., dissenting) (summarizing modern trend in civil law and Puerto Rico jurisprudence toward dispensing with privity requirement); *su-*

275 Ill.App.3d 705, 212 Ill.Dec. 17, 656 N.E.2d 170, 180 (1995), *aff'd in part on other grounds, rev'd in part on other grounds*, 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996); *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078, 1084 n. 2 (Ind.1993); *Prof'l Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887, 897–98 (1984); *Richard W. Cooper Agency v. Irwin Yacht & Marine Corp.*, 46 N.C.App. 248, 264 S.E.2d 768, 770 (1980); *Baughn v. Honda Motor Co.*, 107 Wash.2d 127, 727 P.2d 655, 668–69 (1986).

6. Every seller in Louisiana, a civil code jurisdiction like Puerto Rico, warrants the goods it sells against hidden defects. Under Louisiana law, a buyer may bring an action in redhibition or *quanti minoris* against a remote manufacturer. *Media Prod. Consultants, Inc. v. Mercedes–Benz of N. Am., Inc.*, 262 La. 80, 262 So.2d 377, 381 (1972) (abolishing privity requirement in redhibitory and *quanti minoris* actions); *Cassey v. Arnaudville Indus., Inc.*, 393 So.2d 215, 216 (La.Ct.App.1980) (acknowledging court's authority to award *quanti minoris* remedy against manufacturer in absence of privity). A number of other states have also dispensed with the privity requirement in implied warranty actions. *See, e.g., Universal Motors v. Waldock*, 719 P.2d 254, 256 n. 2 (Alaska 1986); *Southgate Cmty. Sch. Dist. v. W. Side Constr. Co.*, 399 Mich. 72, 247 N.W.2d 884, 885 & n. 1 (1976) (citing *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970)); *Nobility Homes of Tex. v. Shivers*, 557 S.W.2d 77, 81 (Tex.1977).

7. Arizona, California, Illinois, Indiana, North Carolina, and Washington, among other states, have permitted express warranty actions to proceed in the absence of privity. *See, e.g., Flory*, 633 P.2d at 389 (recognizing viability under Arizona law of claim against manufacturer for breach of certain express warranties); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal.App.4th 357, 62 Cal. Rptr.2d 701, 708 n. 10 (1997) (acknowledging exception to privity requirement where plaintiff relies on manufacturers' representation in labels or advertising materials); *Collins Co., Ltd. v. Carboline Co.*, 125 Ill.2d 498, 127 Ill. Dec. 5, 532 N.E.2d 834, 838–39 (1988) (noting differences between express and implied warranty justifying different privity rules); *Prairie Prod., Inc. v. Agchem Div.–Pennwalt Corp.*, 514 N.E.2d 1299, 1302–03 (Ind.Ct.App. 1987) (reversing summary judgment grant on purchasers express warranty claim despite absence of privity and absence of personal injury); *Alberti v. Manufactured Homes, Inc.*, 329 N.C. 727, 407 S.E.2d 819, 825 (1991) (holding privity not required where manufacturer's oral representations made to retailer are intended to be communicated to remote buyers to induce purchase); *Baughn*, 727 P.2d at 669 (relaxing privity requirement under Washington law where manufacturer makes express representations to remote buyer).

*pra* nn. 7 & 8 (discussing developments in other United States jurisdictions). The Puerto Rico Supreme Court banished the privity requirement in cases involving defective products that cause personal injuries and adopted the strict liability doctrine. *See Mendoza v. Cerveceria Corona, Inc.*, 97 D.P.R. 499 (1969). The strict liability doctrine dictates that manufacturers and all other parties in the product distribution chain are responsible, regardless of privity or fault, when a defective product causes a personal injury. *Id.; see also Montero Saldaña v. Am. Motors Corp.*, 7 P.R. Offic. Trans. 501, 107 D.P.R. 452, 460–62 (1978); *Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 25 (1st Cir. 1998). Additionally, Puerto Rico law imposes liability, regardless of privity, on manufacturers of defective products that cause property damage. *See Nat'l Car Rental, Inc. v. Caribe Motors Corp.*, 4 P.R. Offic. Trans. 106, 104 D.P.R. 74, 77–78 (1975) (per curiam); *see also In re Du-Pont–Benlate Litig.*, 877 F.Supp. 779, 786 (D.P.R.1995) (confirming applicability of strict liability doctrine to claim against manufacturer of fungicide that damaged purchasers' crops but caused no personal injury). Privity is also no longer required in certain consumer cases involving real property, including claims asserting a breach of the warranty against eviction. *See Rivera Rosado v. Estado Libre Asociado de P.R.*, 11 P.R. Offic. Trans. 141, 111 D.P.R. 109, 115 (1981) (confirming privity between plaintiff and defendant not required in warranty of eviction cases); *Pereira v. Int'l Basic Econ. Corp.*, 95 D.P.R. 28, 63–64 (1967) (holding first home buyer's claim against contractor-seller conveyed to subsequent buyer).

Puerto Rico law is less clear regarding whether privity is required to state a breach of express or implied warranty claim for economic loss against a remote manufacturer. While the Puerto Rico Supreme Court has not clearly addressed the privity issue in circumstances identical to the instant case, its decisions in analogous cases make reasonably predictable the conclusion that it would reach here. *See R.W. Int'l Corp. v. Welch Foods*, 88 F.3d 49, 53 (1st Cir.1996) ("Absent controlling state court precedent, a federal court sitting in diversity may ... predict [ ] the course the states would take [if] reasonably clear.") (alteration and omission in original).

The court's analysis of Puerto Rico law regarding privity begins with *Ferrer*, the leading Puerto Rico case on the implied warranty against hidden defects. In *Ferrer*, the plaintiff alleged that a defect in the vehicle he purchased caused excessive wear on the tires and sought only economic recovery. The express written warranty covering the vehicle limited his remedy to repair or replacement of any defective vehicle parts. The court deemed the written warranty a contract of adhesion and decided the case on the hidden defects provisions of the Puerto Rico Civil Code. *Ferrer*, 100 D.P.R. at 257; *see also In re Bird Copying Machs., Inc.*, 618 F.2d 883, 885 n. 1 (1st Cir.1980) (noting *Ferrer* court based its decision on implied warranty statute). After acknowledging the general rule that the seller should reimburse the price, the *Ferrer* court held that the action also lies against the manufacturer, "by virtue of the express warranty" that it gave. *Id.* Because Puerto Rico law permits an action for damages against a remote manufacturer of a defective product that causes personal harm or property damage, the court reasoned, a buyer also has action against the manufacturer to obtain reimbursement of the price paid. *Id.* Lack of privity between the remote manufacturer and the buyer, therefore, did not bar Ferrer's action to recover all or part of the purchase price he paid for his defective product. *See Rivera Rosado*, 111 D.P.R.

at 115 (acknowledging *Ferrer* court rejected the direct contractual nexus rule).

The *Ferrer* court also held that the plaintiff could pursue a warranty against hidden defects action against the vehicle distributor. *Ferrer*, 100 D.P.R. at 258. The court relied upon a California strict liability case in reaching its decision regarding the distributor's liability. *See id.* (citing *Barth v. B.F. Goodrich Tire Co.*, 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (1968)).

*Ferrer* established the rule that the seller, manufacturer, and other parties in the distribution chain are "solidarily liable" for the redhibitory and *quanti minoris* remedies. *Id.* at 258. Several years after *Ferrer*, the Puerto Rico Supreme Court revisited the implied warranty statute in *Gorbea*. GSK's argument that the implied warranty statute requires privity relies primarily upon this case.[8] The facts of *Gorbea* are simple: Gorbea sold his home to Fortuño. Gorbea had not constructed the home. Approximately one month later, Fortuño sold the home to Guiot. After the sale between Fortuño and Guiot, the home's drainage system exhibited defects. *Id.* at 140. The court permitted Guiot to pursue an implied warranty claim against Fortuño, the immediate seller, but not against Gorbea, the first seller. Thus, *Gorbea* held that the implied warranty action can be filed against the immediate seller of a home but not against the first, non-contractor seller. *See id.* at 141–43.

*Gorbea's* holding has limited applicability in this case. *Gorbea* did not address the liability of a *manufacturer* under the implied warranty statute. Moreover, un-

like the first seller in *Gorbea*, the manufacturer of a defective product cannot be classified as a "passive victim." *Id.* at 142–43 (distinguishing first seller from contractor and describing contractor as "author of the imperfection" and first seller as "passive victim"). Thus, the court concludes that the *Gorbea* decision does not foreclose Simonet's implied warranty claim.

Subsequent federal and Puerto Rico cases support this conclusion; notwithstanding *Gorbea*, they consistently cite *Ferrer* for the proposition that "the warranty against hidden defects action can be exercised against the manufacturer of a good and other intermediaries in the distribution chain." *Noemi Lugo v. VCI Constr., Inc.*, KLRA0500920, 2006 WL 544530, at *5 n. 3 (P.R. Cir. Jan. 26, 2006) (court's translation) (acknowledging consumer can exercise implied warranty action against cabinet manufacturer and other parties in distribution chain); *see also In re Bird Copying Machs.*, 618 F.2d at 886 (recognizing "*Ferrer* held the manufacturer, the vendor, and the Puerto Rico dealer solidarily liable" under implied warranty statute); *Benitez Gerardino v. People's Marine Serv.*, KLRA0300532, 2003 WL 23314631, at *2–3 n. 1 (P.R. Cir. Sept. 12, 2003) (noting cause of action under Article 1373 available not only against vendor but also against manufacturer and other intermediaries in distribution chain).

A review of Puerto Rico case law reveals the varying approaches the Puerto Rico court has taken to deciding warranty cases. Collectively, the case law manifests an inclination to impose liability for eco-

---

**8.** GSK also cites *In re DuPont*. Contrary to GSK's assertion, the *DuPont* court did not recognize that contractual implied warranty cases still require privity. In fact, the court did not address the privity issue directly or indirectly. The *DuPont* court simply held that a party in privity is not limited to the relief

available under the implied warranty statute. The court recognized that a plaintiff in privity may plead under the implied warranty provision but the availability of that cause of action does not exclude other appropriate actions. *See In re DuPont*, 877 F.Supp. at 786–87.

nomic losses on all parties in the distribution chain when a consumer product is defective. *See, e.g., Benet,* 106 D.P.R. at 237–38 (imposing liability on manufacturer and vendor based on manufacturer's written warranty); *Ferrer,* 100 D.P.R. at 257 (taking into consideration existence of express warranty in recognizing manufacturer's liability under hidden defects statute); *id.* at 258 (relying on strict liability doctrine to impose liability on product distributor).

■ Regardless of whether the Puerto Rico court would hold that no privity is required to assert an implied warranty claim against GSK or that the requisite privity is created by the express warranty GSK allegedly made, the conclusion the Puerto Rico court would reach in this case is reasonably predictable. In light of the existing case law, the court concludes that Puerto Rico would permit Simonet to pursue a claim against GSK under the warranty against hidden defects theory. Accordingly, the court concludes that lack of privity does not mandate dismissal of Simonet's breach of implied warranty claim.[9]

■ The court's analysis regarding Simonet's breach of express warranty claim is much simpler and reaches the same conclusion. The *Ferrer* decision indicates a clear desire on the part of the Puerto Rico Supreme Court to abrogate the privity requirement where a manufacturer expressly warrants the goods it sells, even when the plaintiff seeks to recover only economic losses. *See Ferrer,* 100 D.P.R. at 257; *see also Martínez v. Chase Manhattan Bank,* 8 P.R. Offic. Trans. 542, 108 D.P.R. 515, 526 (1979) (recognizing *Ferrer* "surpassed the strictness of the doctrine of direct contractual nexus"); *Gorbea,* 104

D.P.R. at 148 (Trías Monge, C.J., dissenting) (noting *Ferrer* court broke privity chain by referencing express warranty concept). The *Ferrer* plaintiff did not purchase his vehicle directly from the manufacturer, and the express warranty covering his vehicle did not provide for the remedy imposed by the court. Notwithstanding these facts, the court held the manufacturer liable for the remedy provided by the implied warranty against hidden defects statute. *See Ferrer,* 100 D.P.R. at 257–58; *see also Benet,* 106 D.P.R. at 237–38 (holding manufacturer and seller jointly liable for hidden defects on basis of twelve month express warranty). The *Ferrer* decision reveals Puerto Rico's intention to abandon the privity requirement when a manufacturer expressly warrants its products. Assuming, as both parties have done, that Puerto Rico law recognizes a breach of express warranty cause of action, lack of privity is not fatal to Simonet's claim.

In light of the foregoing, the court concludes that lack of privity does not preclude Simonet's breach of express and implied warranty claims seeking economic losses from GSK.

## 2. Existence of an Express Warranty

■ GSK next argues that the court must dismiss Simonet's express warranty claim because she has not plead the existence of an express warranty. The parties agree that, to prevail on her express warranty claim, Simonet must specify an affirmation of fact, promise, description, sample, or model that might give rise to such a warranty. The court must dismiss her

---

**9.** Another civil code jurisdiction reached a similar result. Louisiana abandoned the privity requirement in implied warranty claims under its redhibition statute. *See Media Prod. Consultants,* 262 So.2d at 381. Notably, the Puerto Rico Supreme Court has previously referenced Louisiana redhibition law in deciding a case under Puerto Rico redhibition law. *See Berríos v. Courtesy Motors of P.R., Inc.,* 91 D.P.R. 441, 446 (1964).

claim if the Amended Complaint fails to identify a representation that could give rise to an express warranty. *See Johnson v. Brown & Williamson Tobacco Corp.,* 122 F.Supp.2d 194, 206 (D.Mass.2000). In *Johnson,* the plaintiff's complaint stated only that the defendant extended an express warranty through its "advertising, marketing and other efforts." *Id.* His complaint contained no assertions that might support an express warranty claim. *Id.*

 Simonet's allegations go significantly beyond those asserted by the *Johnson* plaintiff. Construing the Amended Complaint's allegations in Simonet's favor, the court cannot conclude, "beyond doubt," that "[she] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Simonet alleges that GSK represented, in package inserts, prescribing information, the PDR, and other marketing literature distributed to physicians, patients, and the general public that PaxilCR is of merchantable quality, fit, effective, safe, and otherwise not injurious to the health and well-being of patients.[10] Furthermore, the identified materials contain detailed representations regarding the dissolution rate and controlled-release effect of the tablets. The materials describe the enteric film controlled-release technology purportedly present in each PaxilCR tablet. They also repeatedly state that the tablets must be swallowed whole. Moreover, Simonet alleges that the identified representations were material reasons why she was prescribed, purchased, and ingested PaxilCR tablets. Reading these allegations together and drawing all inferences in Simonet's favor, the court concludes that Simonet's Amended Complaint contains sufficient express warranty allegations to survive a Rule 12(b)(6) motion to dismiss. Whether GSK's representations actually created an express warranty and whether Simonet in fact relied on the express warranty are issues better decided by a jury or, perhaps, on summary judgment.

### 3. Statute of Limitations

GSK's final challenge to Simonet's warranty claims alleges that the same are time-barred. The court finds that allegations in Simonet's Amended Complaint are sufficient to withstand dismissal, at this early stage in the proceedings, on statute of limitations grounds. Therefore, the court declines to dismiss Simonet's express and implied warranty claims on this basis. Nothing in this Opinion and Order shall prevent GSK from raising a statute of limitations defense in later stages of the litigation.

For the reasons stated above, the court **DENIES** in its entirety GSK's motion to dismiss Simonet's express and implied warranty claims.

### C. Counts Five and Six: Fraud Claims

 GSK seeks dismissal of Simonet's fraud claims on the ground that she fails to satisfy the "particularity" requirement of Rule 9(b). *See* Fed.R.Civ.P. 9(b). In federal diversity cases in which a plaintiff alleges fraud, state law governs all issues concerning the substantive elements of the fraud claim. *Rodi v. S. New Eng. Sch. of Law,* 389 F.3d 5, 13 (1st Cir.2004). Conversely, federal law governs the procedure and requirements for pleading fraud in federal court. *Id.*

 Typically, a plaintiff need not plead her claims with great specificity in

---

10. At this stage of the litigation, the court can identify no circumstances under which GSK's assertions made directly to the FDA could serve as the basis of Simonet's express warranty claim.

order to survive a Rule 12(b)(6) motion. Claims alleging fraud, however, constitute an exception to this general rule. Rule 9(b) requires that a plaintiff alleging fraud must state the circumstances of the fraud with particularity. Fed.R.Civ.P. 9(b). Rule 9(b) imposes a heightened pleading requirement in order to ensure notice to a defendant of the plaintiff's claim, to protect a defendant's reputation from harm caused by meritless fraud claims, to discourage "strike suits," and to prevent the filing of suits that simply hope to uncover relevant information during discovery. *U.S. ex rel. Karvelas v. Melrose–Wakefield Hosp.,* 360 F.3d 220, 220 (1st Cir.2004) (citing *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir. 1996)). To satisfy this heightened pleading requirement, a plaintiff's complaint must include specific allegations pertaining to the time, place, and contents of the false representations. *Epstein v. C.R. Bard, Inc.,* 460 F.3d 183, 189–90 (1st Cir.2006); *In re Credit Suisse First Boston Corp.,* 431 F.3d 36, 46 (1st Cir.2005); *Microsoft Corp. v. Computer Warehouse,* 83 F.Supp.2d 256, 262 n. 2 (D.P.R.2000). The specificity requirement applies only to the particulars of the misrepresentation or concealment itself and not to the other elements of fraud, such as intent and knowledge. *Rodi,* 389 F.3d at 15. What constitutes particularity will differ with the facts of each case. *See In re Credit Suisse,* 431 F.3d at 46 (refusing to adopt checklist approach to analyzing sufficiency of securities fraud pleadings); *In re Eli Lilly & Co.,* 789 F.Supp. 1448, 1456–57 (S.D.Ind.1992) (applying relaxed standard where representations occurred over several years).

After reviewing the allegations in her complaint, the court concludes that Simonet's fraud allegations satisfy Rule 9(b)'s particularity requirement. Simonet alleges that GSK falsely represented through the PDR, package inserts, prescribing information,[11] and other marketing literature that PaxilCR was safe and effective for treatment. She also asserts that GSK continued to market and sell PaxilCR despite knowing that its manufacturing process did not adhere to GMP regulations, as informed by the FDA. Additionally, GSK continued to market and sell Paxil despite knowing that PaxilCR tablets were defective, split apart, and failed to provide the controlled release effect and the intended therapy. Her Amended Complaint alleges that GSK failed to disclose the defective and ineffective nature of the PaxilCR tablets. Her opposition to GSK's motion to dismiss clarifies that Simonet's fraud allegations pertain to representations made or information concealed between February 2002 and February 2005.

The court holds that the allegations in Simonet's Amended Complaint, in light of the nature of this case, satisfy Rule 9(b)'s particularity requirements. The facts Simonet alleges indicate that her fraud claim is responsible and supported. Her claims are pled in a manner that places GSK on sufficient notice of the alleged misrepresentation and concealment such that GSK can defend against the underlying charge. Consequently, the court **DENIES** GSK's motion to dismiss Simonet's fraudulent misrepresentation and fraudulent concealment claims.

### D. Count Seven: Statutory Consumer Protection Damages

Simonet's seventh and final claim seeks statutory damages under the consumer

---

**11.** Simonet is not required to provide copies of these documents at this early stage of the litigation. She did, however, submit the January 2005 version of the prescribing information as an exhibit to her opposition to GSK's motion to dismiss. *See* Docket No. 43, Exh. 1.

protection laws of Puerto Rico. GSK urges the court to dismiss Count Seven because Puerto Rico has no specific consumer protection statute that provides a private right of action for consumer fraud. Simonet cites only Law No. 118 of June 25, 1971 ("Law 118"), as amended, P.R. Laws Ann. tit. 32, §§ 3341–3344, as the source of her consumer protection claim. She asserts that Law 118 alone creates an independent substantive cause of action. Simonet offers no other argument in support of her claim. Thus, the court restricts its analysis to whether Law 118, in fact, creates a substantive cause of action as she contends.

■ Notwithstanding the dearth of case law interpreting the broadly-worded Law 118, a recent decision of the District Court for the District of Puerto Rico rejected Simonet's argument. *See Ramos v. Hyundai Motor Co.,* 431 F.Supp.2d 209, 212 (D.P.R.2006). As the *Ramos* court accurately observed, Law 118 does not contain any substantive law, but rather is a part the Code of Civil Procedure. The law is limited to authorizing the filing of class actions by consumers for damages when they have a cause of action under existing law. *See id.* In fact, the statement of motives of Law 118 states that the statute "acknowledges [consumers'] right to file class actions in [Puerto Rico's] courts when they have a cause of action that warrants a remedy according to the law or the jurisprudence." *See* Docket No. 54–2.

Simonet incorrectly argues that *Guzmán Matías v. Vaqueria Tres Monjitas, Inc.,* 2006 TSPR 187, 2006 WL 3782875 (P.R. Dec. 14, 2006), supports her argument that Law 118 contains substantive law. She mischaracterizes the nature of the decision. The *Guzmán Matías* plain-

tiffs' claim arose out of the sale of adulterated milk; Simonet's claim arises out of an allegedly adulterated pharmaceutical. The *Guzmán Matías* opinion did not address whether the plaintiff pled a viable consumer damages claim. The *Guzmán Matías* court's holding dealt only with the propriety of certification of the class.[12] Notwithstanding the similarity between the claims, *Guzmán Matías* does not add to the analysis of whether Law 118 creates an independent substantive cause of action.

In light of the foregoing, the court **GRANTS** GSK's motion to dismiss Simonet's Seventh Cause of action for violation of consumer protection statutes.

## IV. Conclusion

For the reasons discussed above, the court hereby **GRANTS IN PART** and **DENIES IN PART** GSK's motion to dismiss (Docket No. 33). GSK's motion to dismiss is **GRANTED** with respect to the following claims:

- Count One: Negligence
- Count Two: Strict Liability
- Count Seven: Violation of Consumer Protection Statutes

GSK's motions to dismiss is **DENIED** with respect to the following claims:

- Count Three: Breach of Express Warranty
- Count Four: Breach of Implied Warranty
- Count Five: Fraudulent Misrepresentation
- Count Six: Fraudulent Concealment

**SO ORDERED.**

12. In *Guzmán Matías,* the Puerto Rico Supreme Court held that proposed class action complied with the certification requirements of Law 118 and Rule 20 of the Puerto Rico Rules of Civil Procedure and reversed the lower courts denial of class certification. *Guzmán Matías,* 2006 TSPR 187, 2006 WL 3782875, at *14.